CR-93-9                                                             1

En el Tribunal Supremo de Puerto Rico

| El Pueblo de Puerto Rico<br>     Apelado<br><br>     V.<br><br>Juan M. Rodríguez Santana<br>cp/ Juan M. Higgins<br>     Acudado-Apelante | Apelación<br><br>98TSPR140 |
|---|---|

Número del Caso: CR-93-9

Abogados de la Parte Apelante:          Lcdo. Antonio Bauza Torres

Abogados de la Parte Apelada:           Hon. Carlos Lugo Fiol
                                        Procurador General
                                        Lcda. Eunice Amaro Garay
                                        Procuradora General Auxiliar

Fiscal Especial Independiente:          Lcdo. Guillermo Garau Díaz

Tribunal de Instancia:                  Superior de Humacao

Juez del Tribunal de Primera Instancia: Hon. Pierre Vivoni

Fecha:                                  10/23/1998

Materia:                                Inf. Art. 166-A del C. P.

     Este documento constituye un documento oficial del Tribunal
     Supremo que está sujeto a los cambios y correciones del
     proceso de compilación y publicación oficial de las
     decisiones del Tribunal. Su distribución electrónica se hace
     como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pueblo de Puerto Rico

    Apelado

        vs.

                          CR-93-9

Juan M. Rodríguez Santana
c/p Juan M. Higgins

    Acusado y Apelante

Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODON

San Juan, Puerto Rico, a 23 de octubre de 1998

El Sr. Juan M. Rodríguez Santana, también conocido como Juan M. Higgins, alcalde de Humacao hasta 1988, fue encontrado culpable por setenta y ocho (78) infracciones al Art. 166 (a) del Código Penal, 33 L.P.R.A. sec. 4272, por apropiación ilegal agravada y por trece (13) infracciones al Art. 216(a) y (k) del Código Penal, 33 L.P.R.A. sec. 4391, sobre

delitos contra los fondos públicos[1]. De dicha sentencia el señor Higgins apela ante nosotros.

## I

El 23 de noviembre de 1988, se realizó una auditoría en el Municipio de Humacao la cual reflejó irregularidades fiscales. Dicha investigación fue referida al Secretario de Hacienda. Posteriormente, el asunto se refirió al Secretario de Justicia. Los resultados de la investigación estaban relacionados con empleados transitorios y temporeros que fueron transferidos a regulares y con irregularidades administrativas.

El 26 de abril de 1989 el fiscal a cargo de la investigación rindió un informe parcial sobre irregularidades administrativas relacionadas con transacciones de personal realizadas en o después del 12 de julio de 1988.

De otra parte, el 14 de febrero de 1989, la Oficina del Contralor remitió una comunicación al Secretario de Justicia en la que le informó sobre un conflicto de intereses en el Municipio de Humacao. Señaló que entre mayo de 1984 y mayo de 1987 el Municipio ordenó servicios de alimentos (desayunos, almuerzos y meriendas) por la suma de doscientos setenta mil quinientos cincuenta y tres dólares con cincuenta centavos ($270,553.50), para distintas actividades y que el dueño del negocio de "catering" era hermano del comprador del Municipio. Expresó, además, que los servicios se obtuvieron sin celebrar pública subasta.

El 2 de marzo de 1989 el Secretario de Justicia le dirigió una contestación escrita a la Oficina del Contralor y le indicó que en el transcurso de una investigación que el Departamento de Justicia realizó

---

[1] Por los delitos de apropiación ilegal se le impuso una sentencia de doce (12) años de reclusión, concurrentes entre sí y por los delitos contra los fondos públicos se le impuso una pena de diez (10) años de reclusión en cada uno de los casos, concurrentes entre sí, pero consecutivas con las sentencias impuestas por infracciones al Art. 166(a) del Código Penal.

sobre el Municipio de Humacao ya se había percatado de la situación descrita y, por ende, se había iniciado una investigación al respecto.

El 3 de mayo de 1989, el Departamento de Justicia le notificó al entonces alcalde de Humacao, Hon. Ramón E. Vega Sosa, que se había presentado una querella para investigar al señor Higgings por las referidas irregularidades. Se le informó, además, sobre el contenido del informe parcial rendido por el fiscal.

El 23 de julio de 1990 el Secretario de Justicia remitió un informe a los miembros del Panel sobre el Fiscal Especial Independiente (en adelante Panel) y les indicó que luego de investigar los hechos y a base de la prueba testifical y documental recopilada, determinó que existía causa suficiente para creer que el señor Higgins, ex alcalde de Humacao, en unión a otros funcionarios y empleados de dicho Municipio, cometió actos constitutivos de delito grave, algunos con posterioridad a la fecha de vigencia de la ley que crea la figura del Fiscal Especial Independiente, Ley Núm. 2 de 23 de febrero de 1988, 3 L.P.R.A. sec. 99h y ss. Por lo tanto, refirió los casos relacionados con delitos graves ante la consideración del Panel con la recomendación de que se designara un fiscal especial independiente que procediera a llevar a cabo una investigación.

El 28 de noviembre de 1990, el Panel designó a la Lcda. Lydia Lizarribar Masini como fiscal especial independiente (en adelante F.E.I.). El 29 de julio de 1991 la F.E.I. presentó cargos contra el señor Higgins y otros coacusados. Ese mismo día, el Departamento de Justicia presentó denuncias contra el señor Higgins y los otros coacusados por hechos ocurridos con anterioridad a la aprobación de la Ley Núm. 2, supra. El Departamento de Justicia y el F.E.I. imputaban dos grupos de hechos relacionados entre sí. En el primer grupo de acusaciones, se le imputaba al señor Higgins y a los coacusados haber cobrado del Municipio de Humacao sin haber prestado servicios para éste y haberse apropiado de fondos municipales. A uno de los coacusados, el Sr. Radamés Rivera Delgado, se le imputó haberse hecho pasar por otra

persona y recibir salarios sin ser empleado del Municipio de Humacao. El segundo grupo de acusaciones versaba sobre servicios de "catering" cobrados y no rendidos o rendidos de forma distinta.

El 13 de septiembre de 1991, el entonces Tribunal de Distrito, Sala de Humacao, desestimó los cargos presentados por la F.E.I. contra los coacusados, por entender que ésta carecía de jurisdicción.[2] En cuanto al señor Higgins, el tribunal declaró no ha lugar el planteamiento de falta de jurisdicción. La F.E.I. recurrió al antiguo Tribunal Superior, Sala de Humacao, mediante solicitud de certiorari. Dicho tribunal resolvió que debido a que el F.E.I. fue nombrado sólo por dos de los jueces que componían el Panel, su designación carecía de validez. En consecuencia, el 7 de noviembre de 1991 desestimó las acusaciones presentadas por la F.E.I. contra el señor Higgins.

Posteriormente, el 20 de noviembre de 1991, el Panel emitió una resolución, esta vez integrado por sus tres (3) miembros y designó, nuevamente, a la licenciada Lizarribar Masini como F.E.I. El 21 de febrero de 1992 ésta presentó, por segunda ocasión, las denuncias contra el señor Higgins y se determinó causa probable para arresto.

El 27 de febrero de 1992 comenzó la vista preliminar y se determinó causa probable para acusar en treinta y siete (37) cargos y no causa en veintiuno (21) por hechos ocurridos tanto antes como después de la vigencia de la Ley Núm. 2, supra. Tanto el F.E.I. como el Ministerio Fiscal recurrieron en alzada y el señor Higgins, a su vez, presentó una moción de desestimación. Tras la celebración de una vista

---

[2] De acuerdo con la resolución del entonces Tribunal de Distrito, Sala de Humacao, la F.E.I. carecía de jurisdicción para presentar cargos contra los coacusados, (empleados municipales) porque para que ésta pueda asumir jurisdicción sobre personas no mencionadas en el Art. 4 de la Ley Núm. 2, supra, el Secretario de Justicia debe hacer una determinación de que existe conflicto de intereses entre su oficina y los individuos o funcionarios sujetos a investigación. Además, el Secretario debe expresar su intención, luego de la investigación preliminar, de que el F.E.I. prosiga con los casos. En consecuencia, el tribunal resolvió que el Secretario de Justicia no se había pronunciado a los fines de renunciar a su jurisdicción sobre los coacusados.

para escuchar los argumentos, el Tribunal Superior denegó la desestimación de la vista preliminar en alzada.

El 19 de enero de 1993 comenzó la vista en su fondo y el 9 de junio de 1993, el acusado fue sentenciado. De dicha sentencia, el señor Higgins recurre ante nos y hace los siguientes señalamientos de error:

1. Erró el Tribunal Superior, Sala de Humacao, al no denegar la desestimación de las acusaciones radicadas por el Fiscal Especial Independiente, las que no fueron basadas en querellas juramentadas tal y como requiere la Ley Número 2 de 23 de febrero de 1988 en el caso de Pueblo v. Rexach Benítez, 92 J.T.S. 46.

2. Erró el Tribunal Superior, Sala de Humacao, al negarse a desestimar las acusaciones por falta de jurisdicción, no obstante haberse violado los términos dispuestos en el artículo 8 de la Ley 2 de febrero de 1988.

3. Erró el Tribunal Superior, Sala de Humacao, al negarse a desestimar los casos radicados por el Departamento de Justicia al haber transcurrido el término de sesenta (60) días para celebrar la vista preliminar.

4. Erró el Tribunal Superior, Sala de Humacao, al permitir que los casos radicados por el Fiscal Especial Independiente que habían sido desestimados por el Juez Mojica Sandoz el 7 de noviembre de 1991, se utilizaran nuevamente en vista preliminar.

5. Erró el Tribunal Superior, Sala de Humacao, al negarse a disolver el jurado ya que al leerse las acusaciones se mencionó que el acusado había llevado a cabo los actos delictivos en común acuerdo con Radamés Rivera Delgado, Domingo Rivera Delgado, Jesús Rivera Delgado, y Aracelis Santiago Báez.

6. Erró el Tribunal Superior, Sala de Humacao, al admitir un documento en evidencia que fue una certificación de la Junta Estatal de Elecciones que se marcó como exhibit 33 [sic] del Ministerio Público.

7. Erró el Tribunal Superior, Sala de Humacao, al encontrar culpable al acusado de infracción al artículo 216 del Código Penal.

8. Erró el Tribunal Superior, Sala de Humacao, al negarse a dar instrucciones del artículo 3.006 de la Ley Electoral.

9. Erró el Tribunal Superior, Sala de Humacao, al negarse a dar instrucciones del artículo 216 en todos los casos.

10. Erró el Tribunal Superior, Sala de Humacao, al encontrar culpable al acusado habiéndose establecido [sic] la culpabilidad de éste más allá de duda razonable o fundada.

11. Erró el Tribunal Superior, Sala de Humacao, al sentenciar al acusado a la pena con agravante en ambos casos sin previo aviso de agravantes y sin que existieran agravantes.

## II

Como primer señalamiento, el señor Higgins alegó que las acusaciones presentadas por la F.E.I. no estaban basadas en querellas juramentadas y dado el hecho de que el requisito de la juramentación es de cumplimiento estricto, el tribunal de instancia erró al no desestimarlas.

La Ley Núm. 2, supra, se creó con el propósito de prevenir y erradicar cualquier comportamiento indebido o delictuoso por parte de funcionarios gubernamentales, entre éstos, el Gobernador, los jueces, los jefes de agencias y los alcaldes. Véase Exposición de Motivos de la Ley Núm. 2, supra, Leyes de Puerto Rico, 1988, pág. 6; Pueblo v. Rexach Benítez, Op. de 22 de abril de 1992, 130 D.P.R. __ (1992), 92 J.T.S. 46. La Ley Núm. 2, supra, adoptó el mecanismo del F.E.I., quien está bajo la supervisión de un panel de ex jueces del Tribunal Supremo, del Tribunal Superior o de ambos, nombrados por el Gobernador para que lleven a cabo el procesamiento de las personas cubiertas por dicha ley que incurran en conducta delictiva o indebida. Ley Núm. 2, supra, 3 L.P.R.A. sec. 99s; Pueblo v. Rexach Benítez, supra, pág. 9403.

Para que se le remita un caso al F.E.I. es preciso que el Secretario de Justicia realice una investigación preliminar y determine si se ha cometido algún delito grave o menos grave incluido en la misma

transacción.  La Ley Núm. 2, supra, dispone que el Secretario de Justicia realizará una investigación preliminar:

> ... en todo caso en que reciba <u>información bajo juramento</u> que a su juicio constituya causa suficiente para investigar si se ha cometido cualquier delito grave y menos grave incluido en la misma transacción o evento y los delitos contra los derechos civiles, la función pública y el erario público, por alguno de los siguientes funcionarios... (Enfasis nuestro.) Ley Núm. 2, supra, 3 L.P.R.A. sec. 99k.

El requisito de que la información recibida por el Secretario de Justicia sea bajo juramento es de cumplimiento estricto "porque el mismo resulta en una salvaguarda procesal valiosa para el querellado cuya reputación se pone en tela de juicio ante la comunidad". <u>Pueblo</u> v. <u>Rexach Benítez</u>, supra, pág. 9404.

El incumplimiento con el requisito legal de la juramentación no priva al Secretario de Justicia de su deber legal de iniciar una investigación preliminar, pero impide que el Panel pase juicio sobre la querella. En otras palabras, la falta de juramentación constituye un defecto subsanable que puede corregirse por la parte querellante siempre y cuando el delito no haya prescrito. <u>Pueblo</u> v. <u>Rexach Benítez</u>, supra, pág. 9404.

Sin embargo, no basta con que el Secretario de Justicia reciba información bajo juramento, sino que es preciso que ésta constituya causa suficiente para creer que se ha cometido un delito grave. La propia Ley Núm. 2, supra, dispone los factores que el Secretario de Justicia debe tener en cuenta para guiar su juicio y determinar si la información jurada provee causa suficiente para iniciar una investigación. Entre éstos se encuentran: la seriedad de la imputación, la credibilidad de la persona que la formula y los hechos en los que se basa la imputación. La Ley Núm. 2, supra, dispone, además, que se considerará causa suficiente para investigar cualquier informe del Contralor o de la Oficina de Etica Gubernamental que recomiende al Secretario de Justicia la presentación de cargos criminales contra cualquiera de los funcionarios cubiertos por las disposiciones de dicha ley. Ley Núm. 2, supra, 3 L.P.R.A. sec. 99o(1)(2).

Una vez el Secretario de Justicia culmina la investigación preliminar debe rendir un informe detallado al Panel con

recomendaciones sobre si procede o no la designación de un F.E.I. Independientemente de la recomendación del Secretario de Justicia, el Panel tendrá discreción para nombrar un F.E.I. y ordenar la investigación del caso. Por otro lado, si como resultado de la investigación es necesaria la presentación de denuncias o acusaciones, esta responsabilidad le corresponde exclusivamente al fiscal especial, no al Secretario de Justicia. Ley Núm. 2, supra, 3 L.P.R.A. sec. 99k.

A continuación, analizaremos los hechos del caso ante nuestra consideración para determinar si el Secretario de Justicia inició la investigación preliminar conforme a las disposiciones de la Ley Núm. 2, supra.

En el caso de autos, y según expresáramos anteriormente, el Departamento de Justicia realizó una investigación ordinaria en el Municipio de Humacao. Esta se inició sin que mediara una querella o imputación específica o se señalara como sospechosa a persona alguna. Durante el transcurso de la investigación comenzaron a surgir los posibles actos delictivos e información indicativa de que un funcionario público había incurrido en conducta ilegal. Al tomar las declaraciones juradas para preparar el sumario fiscal, la investigación señaló como posible infractor al señor Higgins.

El señor Higgins alega que las declaraciones juradas no suplen el requisito de la juramentación según dispuesto en el Art. 4 de la Ley Núm. 2, supra, 3 L.P.R.A. sec. 99 (k). No le asiste la razón. Veamos.

En primer lugar, es preciso aclarar que la Ley Núm. 2, supra, no exige que se presente una querella ante el Secretario de Justicia, basta con información bajo juramento que constituya causa suficiente para comenzar la investigación preliminar. Según expresáramos en el caso Pueblo v. Rexach Benítez, supra, el requisito de la información bajo juramento tiene como fin someter a la persona que brinda la misma a la penalidad de perjurio si se prueba que el contenido de sus manifestaciones o declaraciones juradas no es cierto: "el requisito de juramentación expone al querellante a la penalidad de perjurio, de ser

falsa la información brindada, y disuade así la presentación de querellas frívolas y hostigantes". Pueblo v. Rexach Benítez, supra, pág. 9404. En el caso ante nuestra consideración, se cumplió con dicho requisito.

El Secretario de Justicia remitió el informe de la investigación preliminar al Panel y recomendó la designación de un fiscal especial, tras haber obtenido declaraciones juradas indicativas de que el señor Higgins había incurrido en conducta delictiva. Estas suplen el requisito dispuesto en la Ley Núm. 2, supra, que exige que la información a raíz de la cual se inicie la investigación preliminar sea juramentada. En consecuencia, las declaraciones juradas constituían causa suficiente para que el Secretario de Justicia le diera curso a la investigación preliminar y remitiera el caso al Panel con la recomendación correspondiente.

Por otro lado, cabe señalar que los hechos del caso Pueblo v. Rexach Benítez, supra, son distinguibles a los del caso que tenemos ante nuestra consideración. En el primero, se presentó una querella contra el señor Rexach Benítez sin que la misma fuese jurada. En dicho caso, a diferencia del que nos ocupa, no había información bajo juramento alguna que sirviese como salvaguarda procesal de la reputación del querellado ni que sometiese al querellante a la penalidad de perjurio en caso de haber mentido.

De otra parte, es preciso indicar que la Ley Núm. 2, supra, confiere al querellado la oportunidad de solicitar al Panel que revise la recomendación del Secretario de Justicia de que se designe un fiscal especial. Sobre el particular, el Art. 4 de la Ley Núm. 2, supra, 3 L.P.R.A. sec. 99k(5), dispone lo siguiente:

> El Contralor de Puerto Rico, el Director de la Oficina de Etica Gubernamental o el querellante podrá solicitar al Panel dentro de quince (15) días a partir de la notificación recibida que revise la negativa del Secretario de Justicia a solicitar un Fiscal Especial. Igualmente, el funcionario a ser investigado podrá solicitar al Panel dentro de los quince (15) días a partir de la notificación recibida que revise y no confirme la recomendación del

Secretario de Justicia de que se designe un Fiscal
Especial. (Enfasis nuestro.)

El señor Higgins, durante el transcurso de la investigación
preliminar, tuvo la oportunidad de hacer uso de dicha prerrogativa y no
lo hizo; en ningún momento objetó la designación de un fiscal especial.

En conclusión, la Ley Núm. 2, supra, dispone que para que el
Secretario de Justicia pueda iniciar una investigación preliminar es
preciso que reciba información bajo juramento que constituya causa
suficiente para creer que una persona cubierta por dicha ley ha
incurrido en conducta delictiva. El requisito de juramentación tiene
como fin exponer al declarante al delito de perjurio y disuadir la
presentación de querellas frívolas u hostigantes contra funcionarios
públicos. Este requisito se cumplió en el caso ante nos ya que el
Secretario de Justicia remitió el caso para la consideración del F.E.I.
tras haber realizado una investigación ordinaria en el transcurso de la
cual obtuvo declaraciones bajo juramento sobre la posible conducta
delictiva del señor Higgins.

## III

En cuanto al segundo señalamiento de error, el señor Higgins alegó
que se violaron los términos dispuestos en el  Art. 8 de la Ley Núm.
2, supra, 3 L.P.R.A. sec. 99o, por lo que, el Tribunal Superior debía
desestimar las acusaciones.

El Art. 8 de la Ley Núm. 2, supra, dispone que:

> Cuando el Secretario de Justicia determine que procede
> realizar una investigación preliminar, éste completará
> dicha investigación preliminar  dentro de un término que no
> exceda de noventa (90) días contados a partir de la fecha
> en que recibe la información. En aquellos casos en los que
> el Departamento de Justicia considere que, por su
> naturaleza o complejidad, no ha sido posible completar
> adecuadamente la investigación preliminar en dicho término
> podrá solicitar, y el Panel a su discreción podrá
> concederle, un término adicional que no excederá de noventa
> (90) días. (Enfasis nuestro.)

La disposición anteriormente citada concede al Secretario de Justicia un término de noventa (90) días para que complete la investigación preliminar, a contarse a partir de la fecha en que recibe la información. Como podemos observar, dicha disposición es compatible con el propósito legislativo de que los procedimientos investigativos iniciados al amparo de la Ley Núm. 2, supra, se atiendan rápidamente. Pueblo v. Navarro Alicea, Op. de 12 de mayo de 1995, 138 D.P.R. ___ (1995), 95 J.T.S. 63, pág. 903. El término de noventa (90) días dispuesto en la Ley Núm. 2, supra, para que el Secretario de Justicia finalice la investigación preliminar es de estricto cumplimiento. En consecuencia, como norma general, dicho funcionario no debe tomarse más tiempo para completar la investigación del que le concede la ley. No obstante, la Ley Núm. 2, supra, no dispone que la consecuencia del incumplimiento con dicho término sea la desestimación de las acusaciones que posteriormente presente el F.E.I. Al interpretarla, no podemos añadirle elementos que el legislador no tuvo en cuenta al momento de aprobarla.

Apoya nuestra conclusión el hecho de que el Art. 9 de la Ley Núm. 2, supra, 3 L.P.R.A. sec. 99p, dispone que si el Secretario de Justicia, luego de recibir una querella o imputación contra un funcionario, no toma acción alguna dentro del término de noventa (90) ó ciento ochenta (180) días, deberá remitir todo el expediente al Panel y éste determinará si procede el nombramiento de un F.E.I. que realice la investigación[3]. Es decir, que aún en el caso en que el Secretario de Justicia se cruce de brazos y no realice la investigación preliminar,

_____

[3] El Art. 9 de la Ley Núm. 2, supra, 3 L.P.R.A. 99p, dispone lo siguiente:

> Si el Secretario de Justicia, luego de haber recibido una querella o imputación contra cualquier funcionario, empleado, ex funcionario o ex empleado a base de lo dispuesto en las secs. 99h a 99z de este título, no tomara acción alguna en el término de noventa (90) días o en el término no mayor de ciento ochenta (180) días cuando hubiere obtenido una prórroga por parte del Panel, deberá someter todo el expediente investigativo al Panel, el cual determinará si procede el nombramiento de un Fiscal

el Panel está facultado por disposición de ley para nombrar un F.E.I. Examinados conjuntamente los artículos 8 y 9 de la Ley Núm. 2, supra, resulta forzoso concluir que el F.E.I. no pierde su jurisdicción ni está legalmente impedido de presentar cargos contra funcionarios públicos únicamente porque el Secretario de Justicia no haya finalizado la investigación preliminar en un plazo de noventa (90) ó ciento ochenta (180) días. La consecuencia del incumplimiento con dicho término por parte del Secretario de Justicia es que éste pierde su facultad para investigar y debe remitir el caso al Panel del F.E.I., para que éste a su vez determine si procede realizar una investigación preliminar.

En el caso ante nos, la investigación se centró en el señor Higgins en mayo de 1989. El Secretario de Justicia refirió el caso al Panel en julio de 1990, es decir, se tardó más del término provisto en la Ley Núm. 2. El Panel, ante estas circunstancias, nombró un F.E.I. Ahora bien, el término provisto por ley para que el Secretario de Justicia finalice la investigación es uno de estricto cumplimiento y no de naturaleza jurisdiccional. Su incumplimiento no acarrea la desestimación de las acusaciones. Es el Panel el que, finalmente, con el expediente investigativo del Secretario de Justicia, determina si procede el nombramiento de un F.E.I. En consecuencia, el error señalado no fue cometido.

## IV

En el tercer señalamiento de error, el señor Higgins alegó que el Tribunal Superior venía obligado a desestimar los cargos debido a que transcurrieron más de sesenta (60) días desde el arresto hasta la celebración de la vista preliminar[4].

---

Especial que lleve a cabo la investigación y procesamiento que sea necesario para la disposición de tal querella.

[4] Este señalamiento de error se refiere a los cargos presentados por el Departamento de Justicia, no a los presentados por el F.E.I.

De acuerdo con las disposiciones de la Regla 64(n)(2) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, el imputado de delito puede presentar una moción para solicitar la desestimación de la acusación o de la denuncia cuando no se celebra la vista preliminar dentro del término de sesenta (60) días contados a partir del arresto o citación. El cumplimiento del Estado con dicho término forma parte del derecho constitucional a juicio rápido de las personas imputadas de delito. No obstante, dicho derecho no es absoluto, "...[m]ás bien es un derecho que requiere tomar en cuenta las circunstancias que rodean cada reclamo del mismo". Pueblo v. Rivera Arroyo, 120 D.P.R. 114, 119 (1987). La infracción del término de juicio rápido dispuesto para la celebración de la vista preliminar no tendrá efecto perjudicial para el Estado si existe justa causa para la tardanza, la demora es imputable al imputado o ha sido consentida por éste. Pueblo v. Rivera Colón, 119 D.P.R. 315 (1987).

Antes de aplicar las doctrinas esbozadas a los hechos, es preciso mencionar que los cargos presentados por el Departamento de Justicia y por el F.E.I. se ventilaron conjuntamente, es decir, la celebración tanto de la vista preliminar como del juicio fue conjunta. Además, la prueba del F.E.I. y la del Ministerio Público, casi en su totalidad, era común.

La defensa del señor Higgins solicitó la suspensión de la vista preliminar y la misma se reseñaló para el 5 de septiembre de 1991. En dicha fecha, el señor Higgins, mediante su representación legal, renunció nuevamente a los términos de juicio rápido para permitir el señalamiento de la vista preliminar el 1 de octubre de 1991. Posteriormente alegó, por conducto de su abogado, que sólo renunció a su derecho a juicio rápido hasta el 1ro de octubre y que a partir de ese día los términos comenzaban a correr nuevamente a su favor.

Sin embargo, y según expresáramos en la narración de hechos, mientras estaba pendiente la celebración de la vista preliminar, el 13 de septiembre de 1991, el Tribunal de Distrito desestimó los cargos

presentados por la F.E.I. contra los coacusados, más no los presentados contra el señor Higgins. De dicha decisión el F.E.I. recurrió al Tribunal Superior. El 30 de octubre de 1991, éste ordenó la paralización de los cargos que no fueron afectados por la resolución del 13 de septiembre. El 7 de noviembre de 1991 el Tribunal Superior desestimó los cargos presentados por el F.E.I. contra el señor Higgins y dejó sin efecto la orden de paralización del 30 de octubre. De dicha resolución se recurrió ante nos, recurso que denegamos el 27 de noviembre de 1991. El 28 de enero de 1992, el Tribunal de Distrito, en virtud de la resolución del Tribunal Superior del 13 de septiembre de 1991 y de nuestra negativa a revisar, emitió una orden en la cual dispuso que se expidieran las citaciones para la vista preliminar de los casos presentados por el Departamento de Justicia.  El 27 de febrero de 1992 se celebró la misma. En consecuencia, la dilación en la celebración de la vista preliminar fue aproximadamente de tres (3) meses.

Examinada la totalidad de las circunstancias en el caso ante nos, resulta forzoso concluir que los trámites procesales interlocutorios mencionados anteriormente, constituyeron justa causa para la dilación en la celebración de la vista preliminar y que ésta no fue irrazonable. Por lo tanto, no hubo violación a los términos de juicio rápido y no erró el Tribunal Superior al negarse a desestimar los cargos.

## V

Como cuarto señalamiento, el señor Higgins sostuvo que tras la desestimación de los cargos presentados por el F.E.I contra el apelante, no podía designarse un nuevo fiscal. Por lo tanto, que el F.E.I. carecía de facultad  para presentar los cargos nuevamente. No le asiste la razón. Veamos.

La Ley Núm. 2, supra, específicamente dispone que la facultad del F.E.I. para procesar está sujeta a que la designación de éste se haga dentro de los cuatro (4) años siguientes a la fecha en que el

funcionario cesó en su cargo y que el delito no haya prescrito. Ley Núm. 2, supra, 3 L.P.R.A. sec. 99k (i). En otras palabras, el transcurso de  cuatro (4) años y la prescripción del delito constituyen los factores temporales que limitan la facultad del F.E.I. para presentar acusaciones.  Por lo tanto, como en este caso los delitos no habían prescrito ni habían transcurrido cuatro (4) años desde que el señor Higgins cesó en su cargo, el F.E.I. no había perdido su facultad para entender en este asunto.

De otra parte, de acuerdo con la Regla 67 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, la desestimación no dispone definitivamente del caso cuando se trata de delitos graves. El fiscal puede iniciar un nuevo proceso siempre que no se trate de un defecto insubsanable o de un delito menos grave que fue desestimado por violación a los términos de juicio rápido.

El defecto en una acusación es subsanable cuando puede corregirse mediante enmienda y cuando la desestimación se basa en defectos en la tramitación o presentación del proceso[5]. La desestimación de la acusación en el caso ante nuestra consideración se basó en que la designación del F.E.I. carecía de validez. Esto equivale a una desestimación por el fundamento de falta de autoridad del fiscal para acusar, según dispuesto en la Regla 64(i) de Procedimiento Criminal. El fiscal carece de autoridad para acusar, entre otras razones, cuando jura y firma una acusación sin ostentar un título válido de fiscal. Dicho defecto es subsanable mediante enmienda.

---

[5] La Regla 66 de Procedimiento Criminal, supra, dispone lo siguiente, en su parte pertinente:

> Si la moción [de desestimación] se basare en defectos en la acusación, denuncia, o pliego de especificaciones que pudieren subsanarse mediante enmienda, el tribunal ordenará se haga la enmienda, y denegará la moción. Si el tribunal declarare con lugar una moción basada en defectos en la presentación o tramitación del proceso, o en la acusación o denuncia, podrá también ordenar que se mantenga al acusado bajo custodia, o que continúe bajo fianza por un término específico, sujeto a la presentación de una nueva acusación o denuncia.

Hemos resuelto que no podemos conceder a los funcionarios de gobierno derechos adicionales a los que disfruta un ciudadano común y corriente en los procedimientos criminales ordinarios. Pueblo v. Navarro Alicea, supra, pág. 905. Por lo tanto, de la misma forma en que el Ministerio Público puede volver a presentar una acusación por delito grave cuando ésta se desestima porque adolece de un defecto subsanable, puede hacerlo el F.E.I. En el caso de autos, el defecto de la falta de validez del nombramiento de la fiscal se corrigió cuando el Panel, debidamente constituido, designó nuevamente a la F.E.I.

VI

En cuanto al quinto señalamiento, el señor Higgins sostuvo que el Tribunal Superior erró al negarse a disolver al jurado porque en el acto de lectura de acusación se leyeron los nombres de las personas que habían actuado en común acuerdo con el apelante, y éstas habían hecho alegación de culpabilidad. El señor Higgins alegó que debido a que el caso generó publicidad, era de esperarse que los miembros del jurado conocieran las alegaciones preacordadas de los coacusados. El Ministerio Fiscal y el F.E.I., por su parte, sostuvieron que en el acto de lectura de acusación sólo se mencionaron los nombres de las personas que actuaron en común acuerdo con el apelante, pero que no eran coacusadas. Tras un examen cuidadoso del incidente, según consta en la minuta del tribunal, concluimos que no se cometió el error señalado.

La Regla 144(d) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, permite que el tribunal ordene la disolución del jurado antes del veredicto si: "se hubiese cometido alguna irregularidad durante el proceso que, a juicio del tribunal, le impidiere al jurado rendir un veredicto justo e imparcial."

Hemos resuelto que la decisión del juez de instancia sobre si procede o no concederse la disolución del jurado es una que, de ordinario, merece deferencia por parte de los integrantes de este Tribunal. Pueblo v. Robles González, 125 D.P.R. 750 (1990); Piñero v.

Tribunal Superior, 94 D.P.R. 204 (1967). El fundamento para ello es que el juez de instancia está en mejor posición de evaluar las circunstancias que requieren la disolución del jurado. Pueblo v. Calderón Alvarez, P.C. de 18 de abril de 1996, 140 D.P.R. __ (1996), 96 J.T.S. 57; Pueblo v. Miranda Santiago, Op. de 1 de junio de 1992, 131 D.P.R. __ (1992), 92 J.T.S. 59; Pueblo v. Santiago Acosta, 121 D.P.R. 727 (1988).

De acuerdo con la minuta preparada por el tribunal de instancia, las acusaciones se leyeron de acuerdo con las instrucciones impartidas a la Secretaria de Sala, luego de las partes  haberse reunido en cámara y haber expresado su conformidad con la forma en que se iban a leer las acusaciones. El tribunal sentenciador estaba en mejor posición que nosotros para aquilatar el perjuicio que la lectura de los nombres de las personas que actuaron en común acuerdo con el señor Higgins pudo tener en el ánimo del jurado. En virtud de lo anterior, no intervendremos con su apreciación.

VII

En cuanto al sexto señalamiento de error, el señor Higgins alegó que el Tribunal Superior no debió haber admitido en evidencia una Certificación de la Junta Estatal de Elecciones debido a que el documento no formó parte del descubrimiento de prueba. A la luz de la totalidad de las circunstancias, concluimos que el error señalado no fue cometido.

La Regla 4 de Evidencia, 32 L.P.R.A. Ap. IV, que establece las normas a seguir en caso de admisión errónea de prueba por parte del tribunal sentenciador, dispone lo siguiente:

> No se dejará sin efecto una determinación de admisión de evidencia ni se revocará sentencia o decisión alguna por motivo de una admisión errónea de evidencia a menos que:
>
> 1. La evidencia fue erróneamente admitida a pesar de la oportuna y correcta objeción de la parte perjudicada por la admisión, y

2. El tribunal que considera el efecto de la admisión errónea entiende que ésta fue factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita.

Es decir, que aún cuando la evidencia impugnada haya sido admitida por error, esto no tendrá como consecuencia la revocación de la sentencia a menos que se cumplan los dos requisitos dispuestos en la Regla 4. Pueblo v. Rivera Nazario, Op. de 7 de noviembre de 1996, 141 D.P.R. __ (1996), 96 J.T.S. 147.

En primer lugar, debemos resolver si el Tribunal Superior erró al admitir en evidencia la certificación de la Junta Estatal de Elecciones, la cual no formó parte del descubrimiento de prueba. Dicho documento fue expedido por el Secretario de la Junta Estatal de Elecciones, el Sr. Néstor J. Colón Berlingeri. La certificación se admitió al amparo de la Regla 65(H) de Evidencia, 32 L.P.R.A. Ap. IV, e indica que el señor Higgins no hizo contribuciones al Partido Popular Democrático durante los años 1985 al 1989.

Resolvemos que no erró el tribunal ya que, al admitir el documento, le concedió oportunidad a la defensa de traer al señor Colón Berlingeri como testigo para que declarase en torno al mismo.

De otra parte, aún en el caso de que el tribunal hubiese errado al admitir dicha prueba, para que ello tenga como consecuencia la revocación de la sentencia, es preciso que ésta haya sido un factor decisivo o sustancial en el resultado del caso. Pueblo v. Ruiz Bosch, 127 D.P.R. 762 (1991); Pueblo v. Rosaly Soto, 128 D.P.R. 729 (1991).

Para determinar si la prueba erróneamente admitida fue un factor decisivo o sustancial en la sentencia hay que resolver, a su vez, si pudo haber tenido una influencia notable, determinante y desmedida en los miembros del jurado. Pueblo v. Rosaly Soto, supra, pág. 745. Esto significa, que si independientemente del resto de la prueba presentada por el Ministerio Público, de no haberse admitido la evidencia impugnada, el resultado del caso hubiese sido distinto. En el caso de autos, el contenido de la prueba admitida revela que el señor Higgins

no hizo donativos al Partido Popular Democrático durante los años 1984 al 1988. A la luz de la totalidad de las circunstancias no podemos concluir que la certificación haya tenido una influencia notable, desmedida y determinante en los miembros del jurado ni que la exclusión de dicha certificación hubiese tenido el efecto de cambiar el veredicto del jurado a uno de no culpable.

## VIII

Como séptimo señalamiento, el señor Higgins alegó que erró el tribunal al encontrarlo culpable por infracción al Art. 216 (a)(k) del Código Penal, 33 L.P.R.A. sec. 4391. Dicho artículo dispone lo siguiente, en su parte pertinente:

> Será sancionado con pena de reclusión por un término fijo de seis (6) años todo funcionario o empleado público y toda persona encargada de <u>recibir, guardar, traspasar o desembolsar fondos</u> públicos que realizara cualquiera de los siguientes actos:
>
> (a) Sin autoridad legal se apropiare en todo o en parte, para beneficio particular o el de otra persona.
>
> ...
>
> (k) Descuidare o dejare de guardar o desembolsar caudales públicos en la forma prescrita por ley. (Enfasis nuestro.)

El señor Higgins alega que dicho artículo no le aplica porque el sujeto activo de dicho delito debe tener las funciones de recibir, guardar, traspasar o desembolsar fondos públicos y un alcalde no las tiene.

En primer lugar, la Ley Orgánica de Municipios, Ley Núm. 146 de 18 de junio de 1980, vigente en el momento en que el señor Higgins se desempeñaba como alcalde del Municipio de Humacao, disponía lo siguiente:

> El Alcalde ejercerá el poder ejecutivo en los municipios y desempeñará aquellas facultades, deberes y funciones, así como las incidentales y necesarias a las mismas, que aquí se le confieren:
>
> (12) <u>Supervisar, administrar y autorizar todos los desembolsos de fondos que reciba el municipio</u> conforme a lo

dispuesto en las secs. 3201 a 3210 de este título. (Énfasis nuestro.)

De acuerdo con las disposiciones de dicho artículo, entre las funciones que el señor Higgins tenía como alcalde se encontraba, precisamente, el desembolso de fondos públicos, tal como lo dispone el Art. 216 del Código Penal, supra. Por lo tanto, no existe lugar a dudas que dicho artículo le aplica en todo su vigor al señor Higgins. Resulta pues carente de toda validez el argumento del apelante de que dicho artículo no le es de aplicación porque, según él, para incurrir en dicha conducta delictiva es necesario que el imputado tenga la custodia real directa o física de los fondos públicos y sea el que los pague finalmente[6]. Como bien expresa la Profesora Dora Névarez Muñiz:

> ...bajo el Código Penal derogado interpretando el artículo 374 se indicó que el sujeto activo del delito era quien tenía la custodia real y directa de los fondos públicos. En Pueblo v. Aparicio, 42 D.P.R. 3 (1931) y Pueblo v. Falcón, 41 D.P.R. 624 (1930), expresó el Tribunal que el propósito del delito al referirse al funcionario público que tiene la custodia de los fondos requiere que éste finalmente verifique la entrega o el acto ilegal donde está involucrado el mal uso de los fondos públicos.
>
> Es nuestra opinión que esos casos de la década del 30, donde ciertamente las finanzas del Gobierno no tenían la sofisticación y sutilezas involucradas en las finanzas y administración pública de la época contemporánea, deben ser atemperados a lo resuelto por la jurisprudencia de California sobre la sección 424. **A esos fines entendemos que no debe requerirse, en el contexto del artículo 216 del Código Penal, que la persona tenga la custodia o posesión real de los fondos públicos, sino que, como se indica en el caso Webb v. Superior Court, 248 Cal. Rptr. 911, basta para fines de la tipicación del delito que el funcionario público tenga el control último sobre los fondos públicos objeto del delito. En ese sentido, los verbos recibir, guardar, traspasar o desembolsar que aparecen en el tipo legal no pueden entenderse literalmente como sinónimo de custodia real y directa.** (Énfasis nuestro.) Nevares-Muñiz, Código Penal de Puerto Rico Revisado y Comentado, Ed. 1998, pág. 434.

---

[6] El apelante cita los casos Pueblo v. Aparicio, 42 D.P.R. 3 (1931) y Pueblo v. Falcón, 41 D.P.R. 624 (1930), en los cuales interpretamos el artículo predecesor al art. 216, el 372 del Código Penal derogado, cuyo contenido era similar al del artículo hoy vigente. En estos casos se resolvió que dicho delito se refiere al funcionario que tiene la custodia real y directa de los fondos y quien los paga finalmente, es decir, el tesorero. Esta interpretación no nos obliga ya que dicho Código Penal fue derogado antes de la aprobación de la Ley Orgánica de Municipios, supra.

El señor Higgins, de acuerdo con las disposiciones de la Ley Orgánica de Municipios, supra, tenía la función de <u>autorizar y supervisar</u> el desembolso de fondos públicos y al permitir que personas que no rendían servicios para el municipio recibieran salarios y pagos, incurrió en la conducta delictiva tipificada en el Art. 216 del Código Penal, supra.

## IX

Discutiremos conjuntamente los señalamientos octavo y noveno, debido a la estrecha relación existente entre los mismos. Ambos se refieren a instrucciones al jurado. Mediante el octavo, el señor Higgins señala como errónea la determinación del tribunal de instancia de negarse a dar instrucciones al jurado sobre el Art. 3.006 de la Ley Electoral[7]. En el noveno señalamiento de error, alegó que el tribunal debió dar instrucciones sobre el Art. 216 del Código Penal, supra (delitos contra fondos públicos), aún en los casos en que se le imputó infracción al Art. 166 del Código Penal, supra, sobre apropiación ilegal agravada.

En reiteradas ocasiones hemos expresado que los tribunales deben comunicar al jurado, si la prueba lo justifica, los elementos de delitos inferiores al imputado o comprendidos dentro de éste. También deben comunicar los elementos esenciales de las defensas levantadas por el acusado, así como los puntos de derecho que al amparo de cualquier teoría razonable pueden estar presentes en las deliberaciones, aunque la prueba de defensa sea débil, inconsistente o de dudosa credibilidad. <u>Pueblo</u> v. <u>López</u> <u>Guzmán</u>, Op. de 28 de octubre de 1992, 131 D.P.R. __ (1992), 92 J.T.S. 142, pág. 1059; <u>Pueblo</u> v. <u>Miranda Santiago</u>, Op. de 1 de junio de 1992, 130 D.P.R. __ (1992), 92 J.T.S. 59, pág. 9496.

El Art. 3.006 de la Ley Electoral, 16 L.P.R.A. sec. 3106, dispone lo siguiente:

> Será ilegal que cualquier persona, para sí, o a nombre o en representación del comité central o de cualquier comité

---

[7] Este señalamiento se refiere solamente a los casos de "catering".

local o candidato de cualquier partido político o de un candidato independiente solicite, reciba o convenga en recibir contribución alguna en exceso de las cantidades dispuestas en este subtítulo.

Un examen cuidadoso de las declaraciones de los testigos nos conduce a concluir que no erró el foro de instancia al negarse a impartir al jurado las instrucciones sobre el artículo anteriormente citado. La prueba desfilada en el presente caso no justificaba el que se impartiesen instrucciones al jurado sobre dicho delito, tal como lo determinó el juez de instancia.

Con relación al noveno señalamiento, la Regla 137 de Procedimiento Criminal, supra, y la jurisprudencia claramente establecen que no se puede alegar error en instrucciones no solicitadas ni objetadas. Pueblo v. Velázquez Caraballo, 110 D.P.R. 369, 372 (1980). La instrucción sobre el Art. 216, supra, fue solicitada por el Ministerio Público y denegada por el tribunal. Del examen de los autos surge que la defensa ni solicitó la instrucción, ni objetó la denegación de la misma. Por lo tanto, no se cometió el error señalado.

## X

Como décimo señalamiento de error, el señor Higgins alega que no se probó su culpabilidad más allá de duda razonable. Es principio rector de nuestro sistema de derecho que la culpabilidad de un imputado de delito debe probarse más allá de toda duda razonable. Pueblo v. De León Martínez, Op. de 16 de febrero de 1993, 132 D.P.R.__ (1993), 93 J.T.S. 22; Pueblo v. Rodríguez Román, 128 D.P.R. 121 (1991). Dicho requisito se cumple cuando la prueba presentada es suficiente en derecho. Además de suficiente, debe ser satisfactoria, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación. Pueblo v. Cabán Torres, 117 D.P.R. 645 (1986); Pueblo v. De León Martínez, supra; Pueblo v. Rodríguez Román, 128 D.P.R. 121 (1991).

Por otro lado, en reiteradas ocasiones hemos expresado que no intervendremos con la valoración de la prueba que haga el juzgador de los hechos, ya sea el jurado o el juez, en ausencia de pasión, prejuicio o parcialidad. Pueblo v. Maisonave, Op. de 28 de junio de 1991, 129 D.P.R. __ (1991), 91 J.T.S. 67.

Tras un examen sereno, desapasionado y cuidadoso de la prueba presentada, de la exposición narrativa de la prueba y de la transcripción de los testimonios, concluimos que no se cometió el error señalado. La abundante prueba testifical y documental desfilada en el caso ante nuestra consideración demostró la culpabilidad del señor Higgins más allá de toda duda razonable. No podemos sustituir la apreciación de los miembros del jurado, quienes aquilataron y dieron crédito a la prueba presentada por el Ministerio Fiscal y por el F.E.I.

## XI

Por último, el señor Higgins alega que el Tribunal Superior erró al sentenciarlo a la pena con agravante sin previo aviso y sin que existiesen agravantes. Indica, además, que no se celebró la vista dispuesta en la Regla 171 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

Hemos resuelto que normalmente no intervendremos con el ejercicio de la discreción del tribunal de instancia en la imposición de la pena, salvo en los casos de claro abuso de discreción. Al ejercer su discreción los jueces deben seguir los criterios establecidos en la Regla 171 de Procedimiento Criminal, supra, a tenor con los hechos y circunstancias de cada caso particular y a la situación individual de cada convicto. Pueblo v. Echevarría Rodríguez I, 128 D.P.R. 299, 371 (1991); Pueblo v. Castro Muñiz, 118 D.P.R. 625 (1987).

La Regla 171 de Procedimiento Criminal, supra, dispone que:

> El Tribunal, a propia instancia o a instancia del acusado o del fiscal, con notificación a las partes o a la parte contraria, podrá oír, en el más breve plazo posible, prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la prueba.

De otra parte, la Regla 162.4 de Procedimiento Criminal, supra, dispone, en su parte pertinente, lo siguiente:

> Tanto el acusado como el fiscal podrán solicitar del tribunal que escuche prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la pena. Si de las alegaciones sometidas surgiere que existe controversia real sobre un hecho material que requiriere la presentación de prueba, entonces el tribunal celebrará una vista en el más breve plazo posible... (Enfasis nuestro.)

Al interpretar las Reglas citadas hemos resuelto que la vista para la discusión de las circunstancias agravantes es innecesaria cuando no existe alguna controversia real sobre un hecho material que requiera la presentación de prueba. Pueblo v. Echevarría Rodríguez, supra; Pueblo v. Santiago Acosta, supra; Pueblo v. Castro Muñiz, supra. Por no haberlo solicitado las partes y en vista de que no había controversia real sobre un hecho sustancial que requiriese la presentación de prueba, en el caso de autos era innecesario celebrar la vista previa a la sentencia que permite la Regla 162.4 de Procedimiento Criminal. De otra parte, el foro sentenciador tuvo a su disposición el informe presentencia y a base del mismo y de las circunstancias del caso, dictó sentencia. Por lo tanto, no intervendremos con la discreción del tribunal de instancia.

**XII**

Por los fundamentos antes expuestos, se dictará sentencia confirmatoria.


                              Miriam Naveira de Rodón
                                  Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pueblo de Puerto Rico

    Apelado

        vs.

Juan M. Rodríguez Santana              CR-93-9
c/p Juan M. Higgins

    Acusado y Apelante

SENTENCIA

San Juan, Puerto Rico, a 23 de octubre de 1998

    Por los fundamentos antes expuestos se dicta sentencia confirmando el dictamen del Tribunal de Primera Instancia, Sala Superior de Humacao.

    Lo pronunció el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López disiente sin opinión escrita. Los Jueces Asociados señores Fuster Berlingeri y Corrada del Río no intervinieron. El Juez Asociado señor Negrón García está inhibido.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo