ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>LUIS OSCAR PÉREZ RAMOS<br><br>Apelante | KLAN202400152 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Casos Núm.:<br>C VI2021G0003<br>C LA2021G0025<br>C LA2021G0026<br><br>Sobre:<br>Asesinato y Ley de Armas |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de diciembre de 2024.

Comparece Luis Oscar Pérez Ramos (en adelante, señor Pérez Ramos y/o apelante) para solicitarnos la revisión de dos (2) *Sentencias* emitidas el 23 de enero de 2024, y notificadas el 31 del mismo mes y año, por el Tribunal de Primera Instancia, Sala Superior de Arecibo (en adelante TPI y/o foro primario).

Mediante la *primera Sentencia* apelada,[1] el foro primario habiendo sido el apelante debidamente juzgado por Juicio por Jurado y declarado convicto del delito del Artículo 6.05 de la Ley de Armas de Puerto Rico de 2020 (Ley de Armas de 2020),[2] en cumplimiento con su fallo, condenó al aquí apelante a una pena de nueve (9) años de reclusión, la cual fue duplicada para un total de dieciocho (18) años, conforme al Artículo 6.01 de la Ley de Armas de 2020,[3] y la cual debe cumplirse de manera consecutiva con el alfanumérico C LA2021G0026. Además, se le impuso el pago del

---

[1] Véase autos originales del alfanumérico C LA2021G0025.
[2] Ley Núm. 168-2019, 25 LPRA sec. 466d.
[3] *Íd.*, 25 LPRA sec. 466.

Número Identificador

SEN2024_____

comprobante de la pena especial, y se le abonó el tiempo en preventiva.

En la *segunda Sentencia* apelada,[4] el tribunal *a quo,* habiendo sido el apelante debidamente juzgado por Juicio por Jurado y declarado convicto del delito del Artículo 6.14 de la Ley de Armas de 2020,[5] en cumplimiento con su fallo, condenó al apelante a una pena de cuatro (4) años de reclusión, la cual fue duplicada para un total de ocho (8) años, conforme al Artículo 6.01 de la precitada Ley de Armas,[6] y la cual debe cumplirse de manera consecutiva con el alfanumérico C LA2021G0025 y con cualquier otra pena que en derecho proceda. Igualmente, se le impuso el pago del comprobante de la pena especial, y se le abonó el tiempo en preventiva.

Por los fundamentos que expondremos, se *confirman* las dos (2) *Sentencia*s apeladas.

I

Por hechos acaecidos el 14 de agosto de 2020, el Ministerio Público presentó tres (3) Acusaciones contra el señor Pérez Ramos.[7] La *primera* fue al amparo del Artículo 93A del Código Penal de Puerto Rico.[8] La *segunda* y *tercera* acusación fueron al amparo del Artículo 6.05 y 6.14 de la Ley de Armas.[9] Subsiguientemente, el 15 de agosto de 2020, el tribunal de instancia determinó que había causa probable para arresto en los tres (3) delitos imputados, lo cual fue reafirmado, el 19 de febrero de 2021, mediante la celebración de la *Vista Preliminar.*[10]

Así las cosas, el 10 de marzo de 2021, se celebró el acto de lectura de acusación.[11] En el mismo, el tribunal de instancia

---

[4] Véase autos originales del alfanumérico C LA2021G0026.
[5] Ley Núm. 168, *supra,* 45 LPRA sec. 466m.
[6] *Íd.,* 25 LPRA sec. 466.
[7] Véase autos originales de los alfanuméricos C LA2021G0025 y C LA2021G0026.
[8] Ley Núm. 146-2012, 33 LPRA sec. 5142.
[9] Ley Núm. 168, *supra,* 25 LPRA secs. 466d y 466m.
[10] Véase autos originales de los alfanuméricos C LA2021G0025 y C LA2021G0026.
[11] *Íd.*

dispuso que, habiendo decursado el término concedido al apelante sin que este hubiese formulado alegación, registró una de no culpable y juicio por jurado en los casos en que procediera. En vista de ello, el señor Pérez Ramos informó que el caso se vería por jurado.

Cabe resaltar que, durante el trámite procesal, las referidas acusaciones sufrieron enmiendas, siendo la última, para cada una de las Acusaciones, el 26 de septiembre de 2023.[12] En síntesis, de acuerdo con las Acusaciones, según enmendadas, el señor Pérez Ramos, actuando en concierto y común acuerdo con José Luis Pérez Galán, se le imputó que, allá para el día 14 de agosto de 2020: (i) le ocasionó la muerte a Jayson Arnaldo Cortés Román, mediante un disparo en el área de la cabeza con un arma de fuego; (ii) portó, transportó o usó el arma de fuego (Revólver Calibre 38 Special, Color Niquel, Marca Cobra, Serie C85469) sin tener una licencia de armas vigente y la utilizó en la comisión del delito de asesinato en primer grado, y (iii) disparó al aludido occiso con un arma de fuego fuera de los lugares autorizados por esta Ley.[13]

Así las cosas, el 10 de agosto de 2023, se llevó a cabo la *Vista sobre Desinsaculación de Jurado*. En esta vista, quedó compuesto el Jurado para el juicio en su fondo, el cual quedó programado para el 21 de agosto de 2023.[14] Ahora bien, el juicio en su fondo se celebró los días 21 y 22 de agosto de 2023, así como los días 8, 14, 15, 25 y 26 de septiembre del mismo año. Durante el transcurso del mismo, fueron admitidas al Jurado catorce (14) piezas de evidencia por estipulación de las partes, y otras catorce (14) por parte del Ministerio Público, de las cuales dos (2) fueron objetadas por la defensa. Entiéndase, el Exhibit #1 y los Exhibit 14-A al 14-E.[15] Igualmente, se presentaron los testimonios de: (i) el Agente Orlando

---

[12] Véase autos originales de los alfanuméricos C LA2021G0025 y C LA2021G0026.
[13] *Íd.*
[14] *Íd.*
[15] *Íd.*

Ayende Figueroa; (ii) la Agente Mayra Acevedo Irizarry; (iii) el Teniente Alexis González Morales; (iv) el señor Carlos Juan Del Valle, quien fue admitido como perito de armas de fuego; (v) el Sargento Roberto Ramos Seda; (vi) el Agente Carlos Villanueva Cordero; (vii) el Sargento Jorge Pérez Vera; (viii) el Teniente Edwin López Cuevas; (ix) el Agente Domingo Molina Lasalle, quien fue admitido como perito; (x) el Doctor Francisco Dávila Toro, quien fue admitido como perito; (xi) el Agente Ángel M. Vázquez Viuret; (xii) el señor Sixto Magdiel Ortiz Bonilla; (xiii) el Agente Alberto Cruz Román y (xiv) el Agente Alfredo González Perez.[16]

El 26 de septiembre de 2023, el Jurado presentó el *Veredicto del Jurado* declarando por unanimidad: (i) no culpable al apelante por el delito de asesinato en primer grado; (ii) culpable por el delito de portación, transportación o uso de armas de fuego sin licencia; y (iii) culpable por el delito de disparar o apuntar arma de fuego. [17]

El mismo día en el cual se emitió el antedicho veredicto, entiéndase, el 26 de septiembre de 2023, el TPI emitió un *Auto de Prisión Provisional*. En el referido auto, el foro primario, tras haber encontrado culpable al apelante de los delitos de los Artículos 6.05 y 6.14 de la Ley de Armas de 2020,[18] ordenó su detención y que fuera retenido hasta que se dictara sentencia. Además, el TPI señaló la *Vista de Dictar Sentencia* para el 6 de diciembre de 2023, a las 10:00 a.m.[19] Llegado el día antes señalado, el tribunal de instancia informó que el apelante fue referido para Informe con relación a la posibilidad de solicitar atenuantes. A solicitud de la defensa, la vista fue transferida con el fin de tener la oportunidad de evaluar la posibilidad de presentar unos planteamientos.[20]

---

[16] Véase autos originales de los alfanuméricos C LA2021G0025 y C LA2021G0026.
[17] Véase autos originales de los alfanuméricos C VI2021G00003, C LA2021G0025. y C LA2021G0026.
[18] Ley Núm. 168, *supra*, 25 LPRA secs. 466d y 466m.
[19] Véase autos originales de los alfanuméricos C LA2021G0025 y C LA2021G0026.
[20] *Íd.*

Finalmente, el 23 de enero de 2024, notificadas el 31 de enero de 2024, el foro primario dictó tres (3) *Sentencias,* dos (2) de las cuales son objeto de revisión ante nos.[21] De las tres (3) *Sentencias,* la que no es objeto de revisión es la emitida en el alfanumérico C VI2021G0003.[22] En dicha Sentencia, el foro primario, luego de aceptado el veredicto del Jurado, declaró no culpable al apelante por el delito al amparo del Art. 93A del Código Penal.[23]

Ahora bien, la *primera Sentencia* objeto de revisión es la del alfanumérico C LA2021G0025, en la cual, habiendo sido el señor Pérez Ramos juzgado debidamente por Juicio por Jurado y declarado convicto del delito al amparo del Art. 6.05 Ley de Armas de 2020,[24] el Tribunal, en cumplimiento con su fallo del día 26 de septiembre de 2023, lo condenó a la pena atenuada de nueve (9) años de reclusión y duplicó la misma, para un total de dieciocho (18) años de reclusión, al amparo del Art. 6.01 de la Ley de Armas de 2020,[25] consecutivo con el caso C LA2021G0026, y consecutivos con cualquier otra pena que en derecho procediera. Además, impuso el pago del comprobante de la Pena Especial y abonó el tiempo en preventiva.[26]

Por otro lado, la *segunda Sentencia* objeto de revisión es la del alfanumérico C LA2021G0026, en la cual, en igual fecha, declarado el apelante convicto del delito al amparo del Art. 6.14 Ley de Armas de 2020,[27] lo condenó a la pena atenuada de cuatro (4) años de reclusión y duplicó la misma, para un total de ocho (8) años de reclusión, al amparo del Art. 6.01 de la Ley de Armas de 2020,[28] consecutivo con el caso C LA2021G0025 y consecutivos con

---

[21] Véase autos originales de los alfanuméricos C LA2021G0025 y C LA2021G0026.
[22] La Sentencia en cuestión, fue dada en corte abierta el 26 de septiembre de 2023, pero transcrita el 23 de enero de 2024, y notificada el 31 de enero de 2024. Véase Autos del expediente judicial del TPI.
[23] Ley Núm. 146, *supra,* 33 LPRA sec. 5142.
[24] Ley Núm. 168, *supra,* 25 LPRA sec. 466d.
[25] *Íd.,* 25 LPRA sec. 466.
[26] Véase autos originales de los alfanuméricos C LA2021G0025 y C LA2021G0026.
[27] Ley Núm. 168, *supra,* 25 LPRA sec. 466m.
[28] *Íd.,* 25 LPRA sec. 466.

cualquier otra pena que en derecho proceda. De igual forma, impuso el pago del comprobante de la Pena Especial y abonó el tiempo en preventiva.[29]

En desacuerdo, el 20 de febrero de 2024, compareció el apelante mediante un recurso de *Apelación* en el cual esgrimió la comisión de los siguientes tres (3) errores:

1. Erró el Tribunal de Primera Instancia de Arecibo al negarse a impartir al Jurado la instrucción de Leg[í]tima Defensa cuando de la prueba presentada surge la misma.

2. Erró el Tribunal de Primera Instancia de Arecibo al aplicar el art. 6.01 (Agravamiento de las Penas) al art. 6.05 ambos de la Ley de Armas cuando [e]ste no viene acompañado de la comisión de delito alguno fuera de la Ley de [A]rmas.

3. Erró el Tribunal de Primera Instancia de Arecibo al aplicar el art. 6.01 (Agravamiento de las Penas) al art. 6.14[,] ambos de la Ley de Armas cuando [e]ste no viene acompañado de la comisión de delito alguno fuera de la Ley de [A]rmas.

Tras varios incidentes procesales, incluyendo el recibo de una *Resolución* del foro primario en la cual se designó al Lcdo. Wilfredo Cruz Liciaga como abogado de oficio del apelante, mediante *Resolución* del 6 de junio de 2024, concedimos término, para que se presentara la transcripción de la prueba oral debidamente estipulada. Luego de que se concediera un término adicional en varias ocasiones, el 30 de agosto de 2024, el apelante presentó la transcripción de la prueba oral.

En respuesta, el 5 de septiembre de 2024, el Procurador General compareció mediante *Moción sobre objeciones al borrador de la transcripción y en solicitud de orden para que se notifique al Procurador General.* Evaluado lo anterior, mediante *Resolución* del 9 de septiembre de 2024, aceptamos la antedicha transcripción y acogimos las objeciones presentadas por el Procurador General.

---

[29] Véase autos originales de los alfanuméricos C LA2021G0025 y C LA2021G0026.

Posteriormente, el 7 de octubre de 2024, el apelante presentó su alegato. Finalmente, el 4 de diciembre de 2024, el Ministerio Público presentó su *Alegato de el Pueblo.*[30]

## II

### A. Apelación Criminal

Sabido es que, en nuestra jurisdicción, toda persona acusada tiene derecho a apelar cualquier sentencia penal que recaiga en su contra.[31] Aunque el derecho a apelación no se encuentra en nuestra Carta de Derechos, nuestro Tribunal Supremo ha puntualizado que la apelación es un privilegio estatutario de carácter cuasiconstitucional.[32] Por ello, los tribunales apelativos deben velar que al convicto no se le prive de sus derechos de manera arbitraria, irrazonable o discriminatoria, y que no se comentan violaciones a las garantías constitucionales del debido proceso de ley e igual protección de las leyes.[33] Ahora bien, para que surja el deber de esta Curia, de atender y resolver en los méritos un recurso de apelación criminal, este Tribunal debe adquirir jurisdicción y el apelante debe cumplir con los requisitos para su perfeccionamiento.[34] Cumplido lo anterior, estaremos facultados para considerar cualquier error de derecho cometido por el tribunal de instancia y para evaluar asuntos combinados de hecho y derecho.[35]

El trámite procesal de un recurso de apelación criminal, desde el Tribunal de Primera Instancia, pasando por este Tribunal intermedio, y hasta el Tribunal Supremo, se rige por las Reglas 193 a la 217 de las Reglas de Procedimiento Criminal, según enmendadas.[36] Además, las Reglas 23 a la 30.1 del Reglamento de

---

[30] *Sic.*
[31] *Pueblo v. Torres Medina*, 211 DPR 950, 959 (2023).
[32] *Pueblo v. Rivera Ortiz*, 209 DPR 402, 419 (2022); *Pueblo v. Serbia* 78 DPR 788, 791–792 (1955).
[33] *Pueblo v. Rivera Ortiz*, supra, a las págs. 419-420; *Pueblo v. Esquilín Díaz*, 146 DPR 808, 816 (1998).
[34] *Pueblo v. Colón Canales*, 152 DPR 284, 291 (2000).
[35] *Pueblo v. Rivera Ortiz*, supra, 422.
[36] 34 LPRA Ap. II.

nuestro Tribunal,[37] rigen el trámite a seguir desde la presentación del recurso de apelación criminal hasta su perfeccionamiento. En lo pertinente, la Regla 23 (A) de nuestro Reglamento dispone que un escrito de apelación criminal contra una sentencia emitida por el tribunal de instancia tiene que ser presentado ante el Tribunal de Apelaciones dentro del término jurisdiccional de treinta (30) días, computados a partir de la fecha en que se dictó la sentencia.[38] Como es sabido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[39]

Por otra parte, cuando se estime que para resolver una apelación es necesario que esta Curia considere alguna porción de la prueba oral presentada ante el foro primario, la parte apelante deberá radicar una moción dentro de los diez (10) siguientes a la radicación del recurso, en la cual acredite el método de reproducción de la prueba que ha de utilizar y los motivos por los cuales ese método es el más apropiado.[40] Con respecto a la reproducción de la prueba oral mediante transcripción, la Regla 29(C) dispone que se hará conforme a la Regla 76 del mismo reglamento.[41] Si se tratase de una exposición estipulada o una exposición narrativa, se hará conforme a las disposiciones de la Regla 76.1.[42] Cabe destacar que, la Regla 76 (B) dispone de un término de treinta (30) días, contados a partir de la entrega de la regrabación, para que la parte apelante presente la transcripción de la prueba oral, salvo que esta Curia disponga otra cosa.[43]

---

[37] 4 LPRA Ap. XXII-B.
[38] *Íd.*, R. 23.
[39] *Ruiz Camilo v. Trafon Group, Inc.,* 200 DPR 254, 268-269 (2018); *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000).
[40] 4 LPRA Ap. XXII-B, R. 29.
[41] *Íd.,* R. 29(C).
[42] 4 LPRA Ap. XXII-B, R. 76.1.
[43] *Íd.*, R. 76(B).

### B. Instrucciones al Jurado

Las instrucciones al jurado constituyen el mecanismo procesal mediante el cual los miembros del jurado toman conocimiento del derecho aplicable al caso.[44] De ordinario, el jurado está compuesto de personas que desconocen las normas jurídicas vigentes en nuestro ordenamiento jurídico.[45] En razón de ello, el magistrado que preside el proceso tiene un deber insoslayable de instruir a los miembros del jurado sobre el derecho que aplica al caso, así como de procurar que las instrucciones impartidas sean correctas, precisas y lógicas.[46] Ello, asegura que el desenlace del proceso adversativo esté guiado tanto por los hechos como el derecho.[47]

Las instrucciones al jurado deben incluir los elementos del delito imputado y, si la prueba lo justifica, los elementos de los delitos inferiores al imputado o de aquellos comprendidos dentro de este.[48] Cabe destacar que el tribunal, a través de las instrucciones, debe hacer hincapié en que el Ministerio Público tiene la obligación de establecer todos los elementos del delito más allá de duda razonable.[49]

A tenor, la Regla 137 de Procedimiento Criminal[50] provee para que, tanto el Ministerio Público como la defensa, soliciten, antes de que el jurado se retire a deliberar, instrucciones especiales al foro de instancia. Ahora bien, el tribunal puede tanto aceptar o rechazar cualquiera de las instrucciones solicitadas, siempre y cuando anote debidamente la decisión tomada en cada una, e informe a las partes

---

[44] *Pueblo v. Rodríguez Vicente*, 173 DPR 292, 297 (2008), citando a E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1992, Vol. II, a la pág. 330.

[45] *Pueblo v. Rodríguez Vicente*, supra, a las págs. 297-298; *Pueblo v. Ortiz Martínez*, 116 DPR 139, 150 (1965).

[46] *Pueblo v. Rodríguez Vicente,* supra, a la pág. 298*; Pueblo v. Ortiz Martínez,* a la pág. 150.

[47] *Pueblo v. Acevedo Estrada*, 150 DPR 84, 95 (2000).

[48] *Pueblo v. Rosario*, 160 DPR 592, 604-605 (2003).

[49] *Íd.,* a la pág. 604.

[50] 34 LPRA Ap. II, R. 137.

su decisión, antes de que estas se dirijan a los miembros del jurado.[51] El fundamento para determinar si se imparte una instrucción es que esté apoyada en prueba que la justifique.[52] Es decir, que "haya evidencia admitida, que, de ser creída por el jurado, sería suficiente como cuestión de derecho penal sustantivo, para que el acusado prevalezca".[53] Al disponerse a esta tarea, el juzgador de hechos no puede negarse a impartir una instrucción luego de hacer un juicio de credibilidad, ya que usurparía las funciones del jurado, que es a quien corresponde aquilatar la prueba y determinar los hechos.[54] A esos efectos, se entenderá que el juez actuó correctamente al denegar una instrucción, "si estima que la evidencia, aun pudiendo ser creída por el jurado, resulta insuficiente en derecho para establecer la comisión en derecho".[55]

Por otra parte, precia acentuar que la aludida Regla 137 dispone que:

> [n]inguna de las partes podrá señalar como error cualquier porción de las instrucciones u omisión en las mismas a menos que planteare su objeción a ellas o solicitare instrucciones adicionales antes de retirarse el jurado a deliberar, exponiendo claramente los motivos de su impugnación, o de su solicitud. Se le proveerá oportunidad para formular éstas fuera de la presencia del jurado. El tribunal procederá entonces a resolver la cuestión, haciendo constar su resolución en el expediente o trasmitiendo cualquier instrucción adicional que estimare pertinente.[56]

Surge con meridiana claridad que la Regla 137 de Procedimiento Criminal[57] impide que se alegue que hubo un error en las instrucciones no objetadas ni solicitadas.[58] Por tanto, la defensa debe objetar oportunamente las instrucciones ante el foro primario para que este pueda corregir cualquier error que cometa.[59]

---

[51] 34 LPRA Ap. II, R. 137.
[52] *Pueblo v. Negrón Ayala*, 171 DPR 406, 415 (2007).
[53] *Íd.*, a las págs. 415-416, citando a Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, supra, a la pág. 332.
[54] *Íd.; Pueblo v. González Colón*, 110 DPR 812, 815 (1981).
[55] *Pueblo v. Negrón Ayala*, supra, a la pág. 416.
[56] 34 LPRA Ap. II, R. 137.
[57] *Íd.*
[58] *Pueblo v. Velázquez Caraballo*, 110 DPR 369, 372 (1980).
[59] *Pueblo v. Ortiz Martínez*, supra, a la pág. 151.

No obstante, en instancias en las que una apelación impugne las instrucciones impartidas al jurado, las mismas se deben considerar en conjunto para así determinar su corrección o incorrección.[60] A tales efectos, el Tribunal Supremo ha expresado que "si las instrucciones que efectivamente transmitió el tribunal a los señores del jurado, o aquellas que omitió transmitir, lesionan derechos fundamentales del acusado, ello podría alegarse como error en la etapa apelativa a pesar de no haberlas objetado oportunamente."[61] Empero, un error al impartir las instrucciones al jurado no acarrea la revocación automática de una sentencia.[62] Para revocar una sentencia de convicción será necesario que el error sea perjudicial o que viole derechos fundamentales o sustanciales del acusado. Igualmente, se deberá demostrar que el resultado del caso hubiera sido distinto de no haberse omitido o impartido cierta instrucción.[63]

### C. La Legítima Defensa

Nuestro ordenamiento jurídico reconoce varias causas de exclusión de responsabilidad penal, entre las cuales se encuentra la legítima defensa. En lo pertinente, el Código Penal de Puerto Rico de 2012 (Código Penal)[64] en su Artículo 25 dispone:

> No incurre en responsabilidad penal quien defiende su persona, su morada, sus bienes o derechos, o la persona, morada, bienes o derechos de otros en circunstancias que hicieren creer razonablemente que se ha de sufrir un daño inminente, siempre que haya necesidad racional del medio empleado para impedir o repeler el daño, falta de provocación del que ejerce la defensa, y que no se inflija más daño que el necesario para repeler o evitar el daño.[65]

En varias instancias, el Tribunal Supremo de Puerto Rico ha reiterado que, en esencia, para que se configure la legítima defensa,

---

[60] *Pueblo v. Domenech Meléndez*, 98 DPR 64, 68 (1969).
[61] *Pueblo v. Ortiz Martínez*, supra, a la pág. 151.
[62] *Pueblo v. Torres Rodríguez*, 119 DPR 730, 740 (1987).
[63] *Íd.,* a la pág. 740.
[64] Ley Núm. 146-2012, 33 LPRA sec. 5001 *et seq.*
[65] *Íd.*, 33 LPRA sec. 5038.

se deben cumplir con estos requisitos: (i) que la persona tenga una creencia razonable de que se ha de sufrir un daño inminente; (ii) que haya necesidad racional del medio utilizado para impedir o repeler el daño; (iii) que no haya provocación de quien invoca la defensa; (iv) que no se inflija más daño que el necesario para repeler o evitar el daño; y (v) que la persona tenga motivos fundados para creer que, al dar muerte al agresor, se hallaba en inminente o inmediato peligro de muerte o de grave daño corporal.[66]

En mérito de lo anterior, nuestro Alto Foro ha expresado que "las circunstancias que concurran para justificar la defensa propia deben ser suficientes para excitar el temor de una persona razonable".[67] Así, pues, "se juzga el temor de determinada persona comparándolo con el de una razonable, de ordinaria prudencia, o un buen padre o una buena madre de familia".[68]

Por otra parte, la legítima defensa, presupone que la persona que la ejerce actúa para prevenir un daño inminente o repeler un daño o ataque que se está llevando a cabo.[69] A esos efectos, la persona debe razonablemente creer que el ataque se va a producir en un futuro inmediato o, si ya se ha iniciado, creer razonablemente que es necesario intervenir para prevenir un daño más grave.[70]

De igual forma, para que se active la legítima defensa, la persona que la emplea no puede infligir más daño que el necesario para repeler o evitar el daño original que se intenta repeler.[71] No es necesario que la persona que invoque la defensa retroceda hasta colocarse en un estado de indefensión antes de atacar a su

---

[66] *Reyes Salcedo v. Policía de P.R.*, 143 DPR 85, 98 (1997); *Pueblo v. González Román I*, 129 DPR 933, 940 (1992); *Pueblo v. Torres Rodríguez*, 119 DPR 730, 748 (1987).
[67] *Reyes Salcedo v. Policía de P.R.,* supra, a la pág. 98, citando *Pueblo v. González Román I*, supra, a la pág. 940.
[68] *Reyes Salcedo v. Policía de P.R.,* supra, a la pág. 98.
[69] D. Nevárez Muñiz, *Código Penal de Puerto Rico*, San Juan, Instituto para el Desarrollo del Derecho, Inc., 2019, a la pág. 54.
[70] *Íd.*
[71] *Reyes Salcedo v. Policía de P.R.,* supra, a las págs. 99-100.

agresor.[72] A fin de cuentas, lo importante es que el medio empleado no sea desproporcional con la provocación que se presentó.[73]

### D. Ley de Armas

La Ley de Armas de 2020 fue creada con el propósito de; (i) atemperarse a la realidad actual buscando un balance entre el derecho constitucional de una persona a poseer y portar armas y el derecho del estado a regularlo; (ii) reducir los costos asociados a poseer y portar un arma; (iii) establecer una amnistía para el recogido de armas ilegales; (iv) añadir delitos adicionales por el uso indebido de armas de fuego; y, (v) derogar la Ley Núm. 404-2000, según enmendada, conocida como "Ley de Armas de Puerto Rico".[74] La Ley Núm. 404-2000 era una legislación fundamentada en la "doctrina del privilegio", por lo que era una ley restrictiva que se enfocaba en regular la tenencia y uso de armas de fuego.[75] Como corolario de lo anterior, la Ley de Armas de 2020 tiene como fin ser consistente con la Segunda Enmienda de la Constitución de Estados Unidos, con las decisiones del Tribunal Supremo Federal, y dejar claro que, en Puerto Rico, el portar y poseer armas de fuego es un derecho fundamental e individual, al igual que en la nación norteamericana [76]

En lo pertinente al caso de marras, el Art. 6.05 de la Ley 168 dispone lo siguiente:

> Toda persona que porte, transporte o use cualquier arma de fuego, sin tener una licencia de armas vigente, salvo lo dispuesto para los campos de tiro o lugares donde se practica la caza, incurrirá en delito grave y convicto que fuere, será sancionada con pena de reclusión por un término fijo de diez (10) años, sin derecho a sentencia suspendida, a, o a disfrutar de los beneficios de algún programa de desvío, o a cualquier alternativa a la reclusión reconocida en esta jurisdicción. De mediar circunstancias agravantes, la

---

[72] *Reyes Salcedo v. Policía de P.R.,* supra, a las págs. 99-100.

[73] D. Nevárez Muñiz, Código Penal de Puerto Rico Comentado por Dora Nevárez Muñiz, San Juan, Instituto para el Desarrollo del Derecho, Inc., 2019, a la pág. 55.

[74] Ley Núm. 168, *supra*, Propósitos.

[75] *Íd.*, Exposición de Motivos.

[76] *Íd.*

pena fija establecida podrá ser aumentada hasta un máximo de veinte (20) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cinco (5) años.

[…].

Se considerará como atenuante cuando el arma esté descargada y la persona no tenga municiones a su alcance. Se considerará como "agravante" cualquier situación en la que el arma ilegal se utilice en la comisión de cualquier delito o su tentativa.[77]

Por su parte, el Artículo 6.14 establece que,

[i]ncurrirá en delito grave con pena de reclusión por un término fijo de cinco (5) años, toda persona que, salvo en casos de legítima defensa, propia o de terceros, o de actuaciones en el legítimo desempeño de funciones oficiales o actividades legítimas de deportes:

(a) voluntariamente dispare cualquier arma de fuego fuera de los lugares autorizados por esta Ley, aunque no le cause daño a persona alguna; o

(b) intencionalmente apunte hacia alguna persona con un arma de fuego, aunque no le cause daño a persona alguna.

De mediar circunstancias agravantes, la pena establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de un (1) año.

[…].[78]

Además, es menester indicar que el Artículo 6.01 de la Ley de Armas de 2020 dispone, en cuanto a lo que concierne a la presente acción, que "si [una] persona hubiere sido convicta anteriormente por cualquier violación a [la Ley de Armas] o por cualquiera de los delitos especificados en esta o **usare un arma en la comisión de cualquier delito** y como resultado de tal violación, alguna persona sufriera daño físico o mental, la pena establecida para el delito se duplicará."[79] Es decir, que de probarse la circunstancia agravante establecida en el Artículo, el juzgador de instancia estará facultado para agravar la pena.[80]

---

[77] Ley Núm. 168, *supra,* 25 LPRA sec. 466d.
[78] *Íd.,* 25 LPRA sec. 466m.
[79] *Íd.,* 25 LPRA sec. 466. (Énfasis nuestro).
[80] *Pueblo v. Concepción Guerra,* 194 DPR 291, 309-310.

Finalmente, advertimos que, de ordinario, los foros apelativos no debemos de intervenir con el ejercicio de la discreción del tribunal de instancia en la imposición de la pena. Ahora bien, en aquellos casos que demuestren un claro abuso de discreción, debemos intervenir para evitar un fracaso a la justicia.[81]

III

En el presente caso, la parte apelante sostiene que el foro primario incidió al negarse a impartir al Jurado la instrucción de legítima defensa. Por otra parte, arguye que el referido tribunal erró al duplicar las condenas impuestas en las dos (2) sentencias aquí apeladas, en virtud del Artículo 6.01 de la Ley de Armas de 2020.

En cuanto al *primer* error esgrimido por el apelante, acentuamos que, conforme detallamos en nuestra previa exposición doctrinal, tanto el ministerio público como la defensa tienen la facultad, para, antes de que el jurado se disponga a deliberar, solicitar al Tribunal que imparta instrucciones especiales.[82] Sin embargo, el Tribunal tendrá discreción tanto para acoger como para rechazar las instrucciones solicitadas. Ahora bien, será necesario que el juzgador anote la decisión tomada respecto a la instrucción solicitada y la informe a las partes, previo a que se le impartan las instrucciones al jurado.[83]

En la acción de marras, luego de que el caso quedó sometido, el día 18 de septiembre de 2023, el foro *a quo* expuso a las partes del título, en corte abierta, las instrucciones que impartiría al Jurado y, posteriormente, les proveyó oportunidad para que solicitaran cualquier instrucción especial que, basado en la prueba presentada, se le debía proveer al Jurado.[84] Así, pues, la defensa le peticionó al jugador de instancia que le impartiera al Jurado la

---

[81] *Pueblo v. Rodríguez Santana,* 146 DPR 860, 888-889 (1998); *Pueblo v. Pérez Zayas,* 116 DPR 197, 201 (1985).
[82] Regla 137 de Procedimiento Criminal, 34 LPRA Ap. II, R. 137.
[83] *Íd.*
[84] Transcripción de la prueba oral, a las págs. 659- 703.

instrucción de legítima defensa.[85] Su petición se basó en que, según la prueba presentada, el hijo del aquí apelante se personó, en la mañana de los hechos que nos ocupan, en la casa del testigo Sixto Magdiel Ortiz Bonilla (en adelante, señor Ortiz Bonilla) con un machete. A esos efectos, el finado, Jason Arnaldo Cortés Ramos (en adelante, señor Cortés Ramos), posteriormente, llegó a la casa del señor Ortiz Bonilla con un arma de fuego, la cual, luego de la muerte del señor Cortés Ramos, estuvo en posesión del señor Ortiz Bonilla y fue ocupada por la Policía de Puerto Rico.[86] Además, la defensa destacó que el Agente Alexis González Morales (en adelante, Agente González Morales) testificó que el apelante "le dijo que no aguanto más amenazas y le quitó el arma [. . .], al muerto".[87] Por otra parte, indicó que el señor Ortiz Bonilla sufrió una herida en la mano, lo cual demostraba que tenía su mano afuera del automóvil.[88] Finalmente, la defensa arguyó que, según los testimonios vertidos en corte, la bala que impactó y le causó la muerte al señor Cortés Ramos fue en dirección de abajo hacia arriba, y que el arma de fuego que se le ocupó al señor Ortiz Bonilla tenía la punta guayada, lo cual en conjunto demostraba que la aludida arma se cayó y, por ello, el tiro vino de abajo hacia arriba.[89]

Evaluado la anterior, en conjunto con los argumentos presentados por el Ministerio Público, el foro primario denegó la instrucción solicitada por la defensa, luego de concluir que en la presente acción no se presentó prueba en cuanto al Artículo 25 del Código Penal, el cual define los requisitos que deben estar presentes

---

[85] Transcripción de la prueba oral, a las págs. 683-698.

[86] *Íd.*, a las líns. 16935-16943.

[87] *Íd.*, a las líns. 16945. Es menester destacar que conforme a la transcripción de la prueba lo que realmente testificó el Agente González Morales fue que el aquí apelante le dijo: "No aguanté más, le quité el revólver del muchacho [. . .]", y no especificó a quien se refería con el muchacho. Véase Transcripción de la prueba oral, a las líns. 1546-1547.

[88] Transcripción de la prueba oral, a la lín. 16948. Puntualizamos que, a preguntas de la defensa, el señor Ortiz Bonilla en todo momento expresó que tenía sus manos dentro del vehículo. Véase Transcripción de la Prueba Oral, a las líns. 10526-10532.

[89] Transcripción de la prueba oral, a las líns. 16968-16979.

para configurar la legítima defensa. Puntualizó que, durante el juicio, en el único momento que se planteó legítima defensa fue a través de las argumentaciones del representante legal del aquí apelante.[90]

Conforme señalamos anteriormente, el fundamento que debe guiar al juzgador de instancia para que permita o niegue una instrucción al jurado es que esté apoyada en la prueba presentada.[91] Entiéndase, que haya evidencia que, de ser creída por el jurado, justifique proveer la instrucción solicitada.[92] Por consiguiente, aunque no le corresponde al Tribunal pasar juicio de credibilidad sobre la prueba presentada, tiene la facultad de denegar una instrucción basado en que la evidencia, aun pudiendo ser creída por el jurado, es insuficiente para justificar la instrucción.[93]

Luego de examinar minuciosamente la prueba ofrecida por la defensa para apoyar la instrucción de legítima defensa, así como los autos ante nuestra consideración y la transcripción de la prueba oral, coincidimos en que no justificaba impartir la instrucción al Jurado. Según esbozamos, para que se configure la legítima es necesario que: (i) la persona tenga una creencia razonable de que se ha de sufrir un daño inminente; (ii) haya necesidad racional del medio utilizado para impedir o repeler el daño; (iii) no haya provocación de quien invoca la defensa; (iv) no se inflija más daño que el necesario para repeler o evitar el daño; y (v) la persona tenga motivos fundados para creer que, al dar muerte al agresor, se hallaba en inminente o inmediato peligro de muerte o de grave daño corporal.[94] Ninguno de los anteriores requisitos se probó mediante la evidencia presentada. Por otro lado, nuestro Alto Foro ha sido

---

[90] Transcripción de la prueba oral, a las líns. 17129-17137.
[91] *Pueblo v. Negrón Ayala*, supra, a la pág. 415.
[92] *Íd.*, a las págs. 415-416.
[93] *Pueblo v. González Colón*, supra, a la pág. 815; *Pueblo v. Negrón Ayala*, supra, a la pág. 416.
[94] *Reyes Salcedo v. Policía de P.R.*, supra, a la pág. 98; *Pueblo v. González Román I*, supra, a la pág. 940; *Pueblo v. Torres Rodríguez*, supra, a la pág. 748.

enfático en que, cuando en apelación se impugnen las instrucciones al jurado, para que tengamos la facultad de revocar una sentencia de convicción se debe demostrar que el resultado del caso hubiera sido distinto de no haberse omitido la instrucción.[95] Aunque el jurado hubiese creído que el finado se personó a la casa del señor Ortiz Bonilla con una arma de fuego, por razón de que el hijo del apelante fue en horas de la mañana de los hechos que nos ocupan a la casa del señor Ortiz Bonilla con un machete, y que, en el momento de los trágicos eventos que culminaron en la muerte del señor Cortés Ramos, su pistola se cayó y que por ello la bala que lo penetró fue en dirección de abajo hacia arriba, no es posible colegir que el resultado del caso hubiera sido distinto. Ello, puesto a que, los anteriores sucesos, no apoyan que en este caso operó la legítima defensa. Por todo lo anterior, nos es forzoso concluir que el *primer* error esgrimido por el apelante no se cometió.

Establecido lo anterior, pasemos a evaluar si el tribunal a *quo* cometió el segundo y tercer error planteado por el apelante. En el acto de lectura de sentencia, celebrado el 23 de enero de 2024, el juzgador de instancia dispuso que las penas que debía cumplir el apelante eran de nueve (9) años de reclusión por el delito del Artículo 6.05 de la Ley de Armas de 2020[96] y cuatro (4) años por el delito del Artículo 6.14[97] de la misma ley. Ahora bien, el tribunal de instancia concluyó que en el presente caso ameritaba duplicar las penas establecidas, en virtud del Artículo 6.01 de la Ley de Armas de 2020,[98] dado a que este artículo opera "cuando se usa un arma de fuego en la comisión de cualquier delito o cuando alguna persona sufriera un daño físico por el uso de un arma de fuego".[99] La representación legal del apelante se expresó inconforme con la

---

[95] *Pueblo v. Torres Rodríguez*, supra, a la pág. 740.
[96] Ley Núm. 168, *supra*, 25 LPRA sec. 466d.
[97] *Íd.*, 25 LPRA sec. 466m.
[98] *Íd.*, 25 LPRA sec. 466.
[99] Transcripción de la prueba oral, a las líns. 19442-19446.

duplicación de las penas, principalmente, dado a que el señor Pérez Ramos resultó no culpable de asesinar al señor Cortés Ramos.

En lo pertinente, el Artículo 6.01 de la Ley de Armas de 2020, dispone, que, "si la persona [. . .] usare un arma **en la comisión de cualquier delito y como resultado de tal violación, alguna persona sufriera daño físico o mental, la pena establecida para el delito se duplicará."**[100] En el presente caso, resulta claro que el apelante usó un arma en la comisión de dos (2) delitos, puesto a que resultó culpable de portar un arma sin licencia, en violación del Artículo 6.05 de la Ley de Armas de 2020, y de disparar y/o apuntar un arma, en violación del Artículo 6.14 de la misma Ley. Aunque el apelante resultó no culpable de asesinar al señor Cortes Román, de los autos ante nuestra consideración, es evidente que los delitos cometidos por el apelante, en los cuales el apelante utilizó un arma de fuego, contribuyeron a la serie de eventos que ocasionaron los trágicos eventos acaecidos el 14 de agosto de 2020, los cuales resultaron en la muerte del señor Cortés Román. A esos efectos, no puede cuestionarse que en este caso el apelante usó un arma en la comisión de dos (2) delitos y, como resultado de tal violación, una persona sufrió daño físico y/o mental. Por lo anterior, coincidimos en que el juzgador de instancia no tenía discreción para optar por no duplicar la pena. Ello, puesto a que "cuando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu".[101]

Por otra parte, cabe subrayar que del Informe del Comité Conferencia de la Cámara de Representantes[102] y del Informe Positivo de la Cámara de Representantes[103] del Proyecto del Senado

---

[100] Ley Núm. 168, *supra*, 25 LPRA sec. 466. (Énfasis nuestro).
[101] *Pueblo v. Maldonado*, 212 DPR 872, 917 (2023).
[102] Informe del Comité Conferencia de la Cámara de representantes de 30 de junio de 2019, 5ta Sesión Ordinaria, 8va Asamblea Legislativa, a la pág. 43.
[103] Informe Positivo de la Cámara de Representantes de 19 de julio de 2019, 5ta Sesión Ordinaria, 8va Asamblea Legislativa, documento adjunto, a la pág. 99.

1050, para la aprobación de la Ley de Armas de 2020, surge que el texto del Artículo 6.01 originalmente propuesto expresaba que "[l]as sentencias serán dictadas a discreción del juez y podrán variar de acuerdo a las circunstancias de cada caso", lo cual posteriormente fue eliminado. En mérito de lo anterior, justipreciamos que la intención legislativa al aprobar el artículo fue que el agravamiento de una pena, en virtud del Artículo 6.01, es una cuestión discrecional del juzgador de instancia. Por tanto, puesto a que coincidimos en que el foro primario no abusó de su discreción al duplicar las penas impuestas, como foro apelativo no tenemos facultad para intervenir con el ejercicio discrecional que realizó el foro primario al establecerlas.[104] Así, pues, disponemos que el *segundo* y *tercer* error esgrimidos por el apelante no se cometieron.

En consecuencia, y luego de haber evaluado el expediente ante nuestra consideración en su totalidad, incluyendo las posiciones de ambas partes y la transcripción de la prueba oral, disponemos *confirmar* las sentencias apeladas.

IV

Por los fundamentos que anteceden, se *confirman* las dos (2) *Sentencias* apeladas.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Hernández Sánchez disiente con voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[104] *Pueblo v. Rodríguez Santana*, supra, a las págs. 888-889; *Pueblo v. Pérez Zayas*, supra, a la pág. 201.

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>LUIS OSCAR PÉREZ RAMOS<br><br>Apelante | KLAN202400152 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Casos Núm.:<br>C VI2021G0003<br>C LA2021G0025<br>C LA2021G0026<br><br>Sobre:<br>Asesinato y Ley de Armas |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

### VOTO DISIDENTE DEL JUEZ HERNÁNDEZ SÁNCHEZ

Disiento respetuosamente de la determinación mayoritaria, pues modificaría las Sentencias apeladas a los fines de no aplicar el Artículo 6.01 de la Ley Núm. 168-2019, según enmendada, también conocida como *Ley de Armas de Puerto Rico de 2020*, 25 LPRA sec. 466, el cual dispone que se dupliquen las penas conforme a los parámetros establecidos en el aludido el Artículo 6.01 de la Ley de Armas de Puerto Rico de 2020, *supra* y conforme a *Pueblo v. Concepción Guadalupe,* 194 DPR 291, 311-312 (2015). Modificaría a estos efectos y así confirmaría las Sentencias.

En San Juan, Puerto Rico, a 13 de diciembre de 2024.

**JUAN R. HERNÁNDEZ SÁNCHEZ**
**Juez de Apelaciones**

Número Identificador

RES2024_____