Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>**RECURRIDO**<br><br>v<br><br>JOSUÉ ROMERO GARCÍA<br><br>**PETICIONARIO** | KLCE202500585 | *Certiorari*<br>procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.<br>DVI2007G0052<br><br>Sobre:<br>Art. 106 C.P. Y OTROS |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente.

# **RESOLUCIÓN**

En San Juan, Puerto Rico, a 30 de junio de 2025.

## **I.**

El 29 de mayo de 2025, el señor Josué Romero García (señor Romero o peticionario), presentó una *petición de Certiorari* en la que solicitó que revoquemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario) el 1 de mayo de 2025, notificada y archivada en autos el 2 de mayo de 2025.[2] En el dictamen, el TPI declaró No Ha Lugar la moción de reconsideración radicada por la parte peticionaria en la que solicitaba que se enmendara la *Sentencia*[3] dictada el 10 de octubre de 2007 por el foro primario contra el señor Romero bajo el derogado Art.106 del Código Penal de 2004, 33 LPRA ant. sec. 4734, a los fines de que se eliminará la expresión a cumplirse en años naturales.

---

[1] Véase Orden Administrativa OATA2025-100 del 3 de junio de 2025.
[2] Apéndice del *Certiorari,* Anejo IX, pág. 19.
[3] Íd., Anejo IV, págs. 8-9.

El 4 de junio de 2025, emitimos una *Resolución* en la que le concedimos diez (10) días al Pueblo de Puerto Rico (parte recurrida) para exponer su posición respecto a los méritos del recurso.

El 20 de junio de 2025, el Pueblo de Puerto Rico representado por la Oficina del Procurador General de Puerto Rico (El Pueblo o parte recurrida), presentó su oposición al recurso de *certiorari* en la que sostuvo que el TPI no erró al denegar la solicitud de corrección de sentencia por el peticionario.

Contando con el beneficio de la comparecencia de las partes damos por perfeccionado el recurso y, en adelante, pormenorizamos los hechos procesales atinentes a la *Petición de Certiorari.*

## II.

El caso de marras tuvo su génesis el 10 de abril de 2007, cuando el señor Josué Romero García (señor Romero o peticionario) fue acusado por el derogado *Art.106 del Código Penal de 2004*, ant. *supra* sec. 4734 (asesinato en primer grado), y así también, por el derogado *Art. 5.04 de la Ley de Armas*, ant. *supra* sec. 458c (portación y uso de arma de fuego sin licencia).[4]

El 10 de octubre de 2007, el peticionario efectuó una alegación preacordada al amparo de la *Regla 72 de Procedimiento Criminal*, 34 LPRA Ap. II, R. 72, ante el foro primario. Como parte del acuerdo, el señor Romero aceptó su responsabilidad penal por los delitos: Art 106 del Código Penal, *supra,* en su modalidad de Segundo Grado, y el Art. 5.04 de la Ley de Armas, *supra.*[5] Al aplicar el Art. 7.03 de la Ley de Armas, *supra,* se duplicó a dieciséis (16) años la pena impuesta por el Art. 5.04, *supra.* La pena propuesta por ambos delitos fue de un total de cuarenta y uno (41) años de cárcel a cumplirse de forma consecutiva. Además, como parte del

---

[4] Íd., Anejo I, págs. 1-2.
[5] Íd., Anejo II, págs. 3-4.

preacuerdo se eliminó la alegación de reincidencia.[6] El foro primario aceptó la alegación preacordada y sentenció al señor Romero, a 41 años de reclusión "a cumplirse en años naturales".[7]

El 7 de febrero de 2025, la Defensa del peticionario presentó ante el TPI una *Moción Solicitando Corrección de la Sentencia* dictada el 10 de octubre de 2007, con el fin de eliminar la expresión "a cumplirse en años naturales", de modo que el peticionario pudiera beneficiarse de las bonificaciones bajo la Ley Núm. 87-2020. Sostuvo, además, que la Regla 185 (a) de Procedimiento Criminal 34 L.P.R.A. Ap. II, R. 185 (a), constituye el mecanismo procesal adecuado para subsanar o modificar la pena impuesta a una persona cuando los términos de la sentencia rebasan los términos establecidos en la ley penal, o se ha impuesto un castigo distinto al que había sido establecido.[8]

El 13 de febrero de 2025, el TPI emitió una Notificación en la que le ordenó al Ministerio Público expresar su posición dentro de termino de 15 días.[9] El Ministerio Público no se expresó en relación a la solicitud del peticionario.

Consecuentemente, el 10 de abril de 2025, el TPI declaró No Ha Lugar la Moción del peticionario. Resolvió que la *Sentencia* dictada fue final y firme, y que, además, no se configuró los requisitos según requeridos por la Regla 185 de Procedimiento Criminal, *supra,* y la jurisprudencia; ***Pueblo v. Marcano Parrilla,*** 168 DPR 721 (2006); ***Pueblo v. Torres Rivera,*** 129 DPR 306 (1991); ***Camareno Maldonado v. Tribunal Superior,*** 101 DPR 552 (1973).[10]

---

[6] Íd., Anejo III, págs. 5-7.
[7] Íd., Anejo IV, págs. 8-9.
[8] Íd., Anejo V, págs. 10-12.
[9] Íd., Anejo VI, págs. 13. Notificado y archivado en autos el 20 de febrero de 2025.
[10] Íd., Anejo VII, págs. 14-15. Notificada y archivada en autos el 15 de abril de 2025.

El 24 de abril de 2025, el peticionario presentó ante el TPI una *Moción de Reconsideración a Solicitud de Corrección de Sentencia.*[11] El 1 de mayo de 2025, el foro primario emitió una *Orden* en la que declaró No Ha Lugar.[12]

Inconforme con la determinación del TPI, el peticionario recurre ante este Tribunal y formula el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Primera Instancia al negarse a corregir la sentencia dictada por el Art. 106 del Código Penal de 2004 aun cuando ello impide al señor Romero García la adjudicación de las bonificaciones por buena conducta y asiduidad a las que tiene derecho bajo la Ley Núm. 87-2020.

El Pueblo de Puerto Rico se opone a que intervengamos con la determinación del foro primario.

### III.

### A.

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

Con el fin de que podamos ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R.40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[13]

---

[11] Íd., Anejo VIII, págs. 16-18.

[12] Íd., Anejo IX, pág. 19. Notificada y archivado en autos el 2 de mayo de 2025.

[13] Esta Regla dispone lo siguiente:

Reiteradamente, el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia la discreción "es el más poderoso instrumento reservado a los jueces". *Rodríguez v. Pérez*, 161 DPR 637, 651 (2004); *Banco Metropolitano v. Berríos*, 110 DPR 721, 725 (1981). La discreción se refiere a "la facultad que tiene [el tribunal] para resolver de una forma u otra, o de escoger entre varios cursos de acción". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018); *García López y otro v. E.L.A.*, 185 DPR 371 (2012). En ese sentido, ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Citibank et al. v. ACBI et al.*, supra; *Medina Nazario v. McNeil Healthcare LLC*, supra, pág. 729. Lo anterior "no significa poder actuar en una forma u otra, haciendo abstracción del resto del Derecho". *Hietel v. PRTC*, 182 DPR 451, 459 (2011); *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001); *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 (1997). Ello, ciertamente, constituiría un abuso de discreción.

En ese sentido, el Tribunal Supremo de Puerto Rico ha establecido que "la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo

---

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro).

que sus decisiones merecen gran deferencia". ***Citibank et al. v. ACBI et al.***, supra, pág. 735. Cónsono con ello, es norma reiterada que este tribunal no intervendrá "con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto". ***Citibank et al. v. ACBI et al.***, supra, pág. 736. Véase, además, ***Trans-Oceanic Life Ins. v. Oracle Corp.***, 184 DPR 689, 709 (2012); ***Lluch v. España Service Sta.***, 117 DPR 729, 745 (1986).

### B.

El delito de asesinato se encontraba tipificado bajo el derogado Artículo 105 del Código Penal de 2004, 33 LPRA ant sec. 4733. Del mismo modo, el Artículo 106, *supra*, contenía los grados de asesinato en primer grado. Por otra parte, el Artículo 107, *supra*, disponía que "[a] la persona convicta de asesinato en segundo grado se le impondrá la pena provista para el delito grave de segundo grado severo". En lo pertinente, la clasificación para el delito grave de segundo grado se encontraba en el Artículo 16 (b), *supra,* el cual disponía que:

> [C]uya pena de reclusión fluctúa entre ocho (8) años un (1) día y quince (15) años. Los delitos de asesinato en segundo grado, la agresión sexual, el secuestro agravado, el secuestro de menores y el robo agravado cuando se inflige daño a la víctima u ocurre en el edificio residencial donde esté la víctima serán delitos graves de segundo grado severo, con pena de reclusión entre quince (15) años y un día y veinticinco (25) años.

Del mismo modo, en lo pertinente al caso de autos, el Artículo 66 (c), *supra*, sobre las penas aplicables disponía lo siguiente:

> (c) **"Delito de segundo grado severo"** conlleva una pena de reclusión por un **término fijo en años naturales** que no puede ser menor de quince (15) años un (1) día ni mayor de veinticinco (25) años. En tal caso, la persona puede ser considerada para libertad bajo palabra por la Junta de Libertad bajo Palabra al cumplir el ochenta (80) por ciento del término de reclusión dispuesto.

**c.**

El 21 de noviembre de 2011, se aprobó el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011 (Plan de Reorganización Núm. 2)* 3 LPRA Ap. XVIII, mediante el cual el Gobierno de Puerto Rico decretó como política pública "la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad." 3 LPRA, Ap. XVIII. De modo que, el Plan de Reorganización tiene como objetivo principal "establecer procesos de rehabilitación moral y social de los confinados para fomentar su reincorporación a la sociedad". ***Vargas Serrano v. Ints. Correccional***, 198 DPR 230, 240 (2017).

El Artículo 5 del ***Plan de Reorganización de 2011***, *supra,* dispone que tendrá como facultad ampliar los programas de educación y trabajo para que impacten a toda la población correccional que interese participar y asegure la aplicación correcta de los sistemas de bonificación por trabajo y estudio que permitan las leyes aplicables.

El Sistema de Rebajas de Términos de Sentencias está codificado en el Capítulo IV, Artículo 11 del *Plan de Reorganización de 2011, supra,* y el Artículo 12 establece las Bonificaciones por trabajo, estudio o servicios. En lo pertinente, el Artículo 11 *del Plan de Reorganización de 2011, supra,* disponía originalmente el sistema de bonificaciones solo para personas sentenciadas antes de la vigencia del Código Penal de 2004. Ulteriormente, **se aprobó la Ley Núm. 87-2020, para enmendar el Artículo 11 del *Plan de***

*Reorganización de 2011, supra,* **a los fines de extenderle a toda la población penal de Puerto Rico, sin considerar el Código Penal bajo el cual fueron sentenciados y cumplen condena, la oportunidad de recibir las bonificaciones por buena conducta y asiduidad, sujeto a las excepciones y porcentajes de acumulación preceptuados en dicho Artículo.** La enmienda incorporada incluyó el modo en que deben de computarse las bonificaciones por buena conducta y asiduidad en el caso de personas que hayan sido sentenciadas después de la vigencia del Código Penal. Así, la Ley Núm. 87-2020, *supra,* enmendó el Artículo 11 del *Plan de Reorganización de 2011, supra,* y en lo pertinente dispuso lo siguiente:

> Artículo 11. — **Sistema de rebaja de términos de sentencias**.
>
> Toda persona sentenciada a cumplir término de reclusión en cualquier institución, antes de la vigencia del Código Penal de Puerto Rico de 2004, que esté disfrutando de un permiso concedido a tenor con lo dispuesto en este Plan o que se encuentre recluida en cualquier entidad gubernamental o privada como parte de un programa de rehabilitación, o disfrutando de libertad bajo palabra concedida por la Junta de Libertad Bajo Palabra, y que observare buena conducta y asiduidad, tendrá derecho a las siguientes rebajas del término de su sentencia, las cuales se computarán desde su admisión a la institución de que se trate o desde que se concede la libertad bajo palabra:
>
> a) por una sentencia que no excediere de quince (15) años, doce (12) días en cada mes; o
>
> b) por una sentencia de quince (15) años o más, trece (13) días por cada mes.
>
> Dicha rebaja se hará por el mes natural, que representará un plazo de 30 días. Si la sentencia contuviere una fracción de mes, bien sea al principio o al fin de dicha sentencia, se le abonarán dos (2) días por cada cinco (5) días o parte de los mismos, contenidos en dicha fracción.
>
> **Toda persona sentenciada a cumplir término de reclusión en cualquier institución, "con posterioridad a la vigencia del Código Penal de Puerto Rico de 2004",** que esté disfrutando de un permiso concedido a tenor con lo dispuesto en este Plan, o que se encuentre recluida en cualquier entidad gubernamental o privada como parte de un programa de rehabilitación, que observare buena conducta y asiduidad, tendrá derecho a las siguientes rebajas del término de su sentencia, las cuales se computarán desde su admisión a la institución de que se trate:

c) por una sentencia que no excediere de quince (15) años, seis (6) días en cada mes; o

d) por una sentencia de quince (15) años o más, siete (7) días por cada mes.   Dicha rebaja se hará por mes, que representará un plazo de 30 días. Si la sentencia contuviere una fracción de mes, bien sea al principio o al fin de dicha sentencia, se le abonarán un (1) día por cada cinco (5) días o parte de los mismos, contenidos en dicha fracción.

La deducción por buena conducta y asiduidad podrá hacerse durante el tiempo que hubiere permanecido privada de su libertad cualquier persona acusada de cometer cualquier delito público, de ser sentenciada por los mismos hechos por los cuales hubiere sufrido dicha privación de libertad.

**Se excluye de las bonificaciones que establece este Artículo** toda condena que apareje pena de reclusión de noventa y nueve (99) años, toda condena que haya dado lugar a una determinación de reincidencia agravada o de reincidencia habitual, conforme establecen el Código Penal de 1974, de 2004 y el Código Penal vigente, la condena impuesta en defecto del pago de una multa **y <u>aquella que deba cumplirse en años naturales.</u>**

### D.

La *Regla 185 de las de Procedimiento Criminal de Puerto Rico, supra,* se considera el mecanismo adecuado para corregir o modificar la pena impuesta cuando la sentencia es ilegal, contiene errores de forma, se ha impuesto un castigo distinto al previamente establecido, o cuando por razones justicieras amerita que se reduzca la pena impuesta. ***Pueblo v. Silva Colón,*** 184 DPR 759, 774 (2012). En lo particular al caso que nos ocupa, el inciso (a) de la Regla dispone que:

(a) Sentencia ilegal; redacción de la sentencia-El tribunal sentenciador podrá corregir una sentencia ilegal en cualquier momento. Asimismo, podrá, por causa justificada y en bien de la justicia, rebajar una sentencia dentro de los noventa (90) días de haber sido dictada, siempre que la misma no estuviere pendiente en apelación, o dentro de los sesenta (60) días después de haberse recibido el mandato confirmando la sentencia o desestimando la apelación o de haberse recibido una orden denegando una solicitud de *certiorari.*

(b) Errores de forma; Errores de forma en las sentencias, órdenes u otros documentos de los autos y errores en el expediente que surjan por la inadvertencia u omisión podrán corregirse por el tribunal en cualquier momento, y luego de

notificarse a las partes, si el tribunal estimara necesaria dicha notificación.

Como podemos ver, en el primer inciso de la Regla 185 de las de Procedimiento Criminal de Puerto Rico, *supra*, se distinguen dos escenarios; a saber: cuando se aduce que la sentencia objeto de cuestionamiento es una ilegal o cuando se parte de la premisa de que la decisión es válida. Bajo el primer supuesto, hemos de señalar que por sentencia ilegal se entiende aquella dictada sin jurisdicción o aquella decretada por el tribunal sentenciador en total transgresión a la ley penal. Por tal razón, aquellas sentencias que no se ajustan a la letra de la ley, por haberse impuesto una pena contraria a lo que dispone el estatuto, se consideran nulas e inexistentes por ser las leyes penales de carácter jurisdiccional. ***Pueblo v. Silva Colón,*** *supra,* ***Pueblo v. Lozano Díaz***, 88 DPR 834, 840 y 842 (1963). En vista de ello, el tribunal puede corregir una sentencia ilegalmente emitida en cualquier momento. ***Pueblo v. Casanova Cruz***, 117 DPR 784, 786 (1986).

Por otro lado, debemos recordar que es norma firmemente establecida que el tribunal sentenciador tiene amplia discreción para disponer lo que proceda en derecho. Nuestro más alto foro ha establecido que, por norma general, los tribunales apelativos no intervendremos con el ejercicio de la discreción del tribunal de instancia en la imposición de la pena, salvo en los casos de claro abuso de discreción. ***Pueblo v. Rodríguez Santana***, 146 DPR 860(1998); ***Pueblo v. Pérez Zayas***, 116 DPR 197 (1985).

**IV.**

En el caso de marras, el Sr. Romero García fue sentenciado a 41 años de reclusión, a cumplirse en **años naturales.** Con el objetivo de obtener una reducción en los términos de su sentencia, el peticionario solicitó la modificación de la sentencia en su contra al amparo de la Regla 185 de Procedimiento Criminal, *supra,* para que

se eliminará la expresión "a cumplirse en años naturales", con el fin de tener la oportunidad de recibir las bonificaciones por buena conducta y asiduidad. En desacuerdo, el Pueblo de Puerto Rico, sostiene que el foro primario no incurrió en error, ya que el peticionario no demostró que el TPI incurriera en un abuso de discreción ni que dicha determinación fuera contraria a derecho.

Tras un análisis objetivo, sereno y cuidadoso del expediente, y a la luz de los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* resolvemos que debemos abstenernos de ejercer nuestra función revisora. A nuestro juicio no atisbamos motivo o error alguno que amerite nuestra intervención con la determinación del foro primario. La *Resolución* recurrida es esencialmente correcta en derecho, al no haberse incurrido en un abuso de discreción, pasión, prejuicio, o parcialidad. El TPI actuó de acuerdo con la normativa aplicable al caso.

Acorde con la normativa antes citada, el Sr. Romero García puede solicitar bonificaciones por buena conducta y asiduidad, a pesar de haber sido sentenciado bajo las disposiciones del Código Penal de 2004, *supra*, esta oportunidad le fue concedida bajo la Ley Núm. 87-2020. Sin embargo, **las bonificaciones por buena conducta y asiduidad no se conceden de forma automática.** Según lo previamente indicado, el texto del Artículo 11 de la Ley Núm. 2-2011, *supra,* **excluye** las bonificaciones entre otras condenas, **aquellas que deban cumplirse en años naturales.**

En esa línea, de un análisis cuidadoso del expediente, surge que el peticionario, firmó un preacuerdo con el Ministerio Público, mediante el cual aceptó su culpabilidad penal por el delito de asesinato en segundo grado. Conforme al Artículo 66 del derogado Código Penal de 2004, *supra,* dicho delito estaba clasificado como un delito de segundo grado severo que conllevaba una pena no

menor de quince años y un día y no mayor de veinticinco años, **a cumplirse en años naturales.**

Del mismo modo, en nuestro ordenamiento jurídico penal rige el postulado básico de que la ley aplicable a unos hechos delictivos es aquella vigente al tiempo de cometerse el delito. ***Pueblo v. González***, 165 DPR 675, 684 (2005), ***Pueblo v. Rexach Benítez,*** 130 DPR 273, 301 (1992). La sentencia impuesta por el foro primario es legal, conforme al derecho vigente al momento en que el peticionario fue sentenciado. Por tanto, el foro primario no erró al denegar la solicitud de modificación de la sentencia al amparo de la Regla 185 de Procedimiento Criminal, *supra.* No intervendremos con la determinación recurrida.

## V.

Por los fundamentos pormenorizados, se deniega la expedición del auto de *certiorari.*

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones